Francis J. "Casey" Flynn, Jr.
CA State Bar No. 304712
LAW OFFICE OF FRANCIS J. FLYNN, JR.
422 South Curson Avenue
Los Angeles, California 90036
Tele: 314-662-2836
Email: casey@lawofficeflynn.com

James J. Rosemergy (*pro hac vice*)
CAREY, DANIS & LOWE
8235 Forsyth, Suite 1100
St. Louis, MO 63105
Tele: 314-725-7700
Direct: 314-678-1064
Fax: 314-721-0905
jrosemergy@careydanis.com

Steven A. Schwartz (*pro hac vice*)
Zachary P. Beatty (*pro hac vice*)
CHIMICLES SCHWARTZ KRINER
& DONALDSON-SMITH LLP
361 W. Lancaster Ave.
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
steveschwartz@chimicles.com
ZPB@chimicles.com

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| LONA'S LIL EATS, LLC, on its own behalf and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> DOORDASH, INC., <br><br> Defendant. | Case No.: 3:20-cv-06703-TSH <br><br> **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** <br><br> Hearing: January 21, 2020, 10:00AM |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

ISSUES TO BE DECIDED ................................................................................................2

STATEMENT OF THE FACTS ..........................................................................................2

STANDARD OF REVIEW ..................................................................................................4

ARGUMENT .........................................................................................................................5

I.      Lona's Adequately Pleads a Lanham Act Claim Under § 1125(a)..................................5

        A.      Lona's, as a Restaurant, May Pursue a Lanham Act Claim Against DoorDash....5

        B.      Lona's Adequately Pleads the Remaining Elements of a Lanham Act Claim.......9

                1.      Lona's sufficiently alleged three false or misleading statements
                        made by DoorDash that actually deceive or have a tendency to
                        deceive consumers ..................................................................................9

                2.      DoorDash's misrepresentations about Lona's are actionable
                        "commercial advertisement or promotion."............................................13

        C.      Plaintiff's FAL and UCL Claims Should Not Be Dismissed Based Upon
                the Lanham Act Claim ................................................................................16

II.     Standing Exists Under the FAL and UCL.................................................................17

III.    Defendant Ignores Allegations That Clearly Establish
        Plaintiff's Entitlement to Relief ..............................................................................18

IV.     Plaintiff's Individual Reliance is Not an Element of a UCL
        or FAL Claim of This Sort .......................................................................................20

V.      DoorDash's Websites Are Themselves Advertisements................................................22

VI.     Plaintiff is Entitled to Injunctive Relief ..................................................................23

CONCLUSION ....................................................................................................................24

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>CASES</u>

3

*1524948 Alberta Ltd. v. Lee*,
    No. 1:10-cv-02735-RWS, 2011 U.S. Dist. LEXIS 77365 (N.D. Ga. July 15, 2011) ............ 16

4

5

*23andMe, Inc. v. Ancestry.com DNA, LLC*,
    356 F. Supp. 3d 889 (N.D. Cal. 2018) .......................................................... 11, 12

6

*Alfasigma USA, Inc. v. First Databank, Inc.*,
    398 F. Supp. 3d 578 (N.D. Cal. 2019) ................................................................ 15

7

8

*Allergan United States v. Imprimis Pharm., Inc.*,
    No. 17-cv-1551-DOC, 2017 U.S. Dist. LEXIS 223117 (C.D. Cal. Nov. 14, 2017)........ 21, 22

9

10

*Ariix, LLC v. Nutrisearch Corp.*,
    No. 17-cv-320-LAB (BGS),
    2018 U.S. Dist. LEXIS 48527 (S.D. Cal. Mar. 23, 2018)......................................... 13, 14, 16

11

12

*Axis Imex, Inc. v. Sunset Bay Rattan, Inc.*,
    No. 08-cv-3931-RS, 2009 U.S. Dist. LEXIS 2667 (N.D. Cal. Jan. 7, 2009)........................ 10

13

14

*Barrus v. Sylvania*,
    55 F.3d 468 (9th Cir. 1995)............................................................................. 7

15

16

*Bernard v. Donat*,
    No. 11-cv-03414-RMW, 2012 U.S. Dist. LEXIS 19791 (N.D. Cal. Feb. 16, 2012)............... 7

17

18

*Biocell Tech. LLC v. Arthro-7*,
    No. 12-cv-00516-JVS, 2012 U.S. Dist. LEXIS 196044 (C.D. Cal. Nov. 19, 2012).. 10, 11, 12

19

20

*Bobbleheads.com, Ltd. Liab. Co. v. Wright Bros., Inc.*,
    259 F. Supp. 3d 1087 (S.D. Cal. 2017) ...................................................... 9, 11, 12

21

22

*Buckeye Tree Lodge v. Expedia, Inc.*,
    No. 16-cv-04721-VC, 2019 U.S. Dist. LEXIS 40860 (N.D. Cal. Mar. 13, 2019)........... 23, 24

23

*Clorox Co. v. Reckitt Benckiser Grp. PLC*,
    398 F. Supp. 3d 623 (N.D. Cal. 2019) .......................................................... 10, 11, 18, 22

24

25

*Coastal Abstract Services v. First Am. Title Ins. Co.*,
    173 F.3d 725 (9th Cir. 1999)........................................................................ 13, 15

26

27

*Davidson v. Kimberly-Clark Corp.*,
    873 F.3d 1103 (9th Cir. 2017)............................................................................. 5

28

*Davis v. HSBC Bank*,
    691 F.3d 1152 (9th Cir. 2012)............................................................................. 4

*Deitz v. Comcast Corp.*,
    No. 06-cv-06352-WHA, 2006 U.S. Dist. LEXIS 94333 (N.D. Cal. Dec. 21, 2006)............23

*Doctor's Assocs. v. QIP Holder LLC*,
    No. 3:06-cv-1710(VLB), 2010 U.S. Dist. LEXIS 14687 (D. Conn. Feb. 19, 2010) ............16

*Factory Direct Wholesale, LLC v. Itouchless Housewares & Prods.*,
    411 F. Supp. 3d 905 (N.D. Cal. 2019) ...........................................................................7, 10

*Genus Lifesciences Inc. v. Lannett Co.*,
    378 F. Supp. 3d 823 (N.D. Cal. 2019) ........................................................................13, 14

*Glob. Tech LED, Ltd. Liab. Co. v. HiLumz Int'l Corp.*,
    No. 2:15-cv-553-FtM-29CM, 2017 U.S. Dist. LEXIS 20512 (M.D. Fla. Feb. 14, 2017).....16

*Gordon & Breach Sci. Publishers, Ltd. v. Am. Inst. of Physics*,
    859 F. Supp. 1521 (S.D.N.Y. 1994)............................................................................13, 15

*Halicki v. United Artists Communications, Inc.*,
    812 F.2d 1213 (9th Cir. 1987).........................................................................................7

*Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*,
    700 F. App'x 251 (4th Cir. 2017) ..........................................................................7, 13, 16

*Jack Russel Terrier Network of N. Cal. v. Am. Kennel Club*,
    407 F. 3d 1027 (9th Cir. 2005)........................................................................................8

*Kwikset Corp. v. Superior Court*,
    246 P.3d 877 (Cal. 2011) .........................................................................................17, 21

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*,
    114 F. Supp. 3d 852 (N.D. Cal. 2015) ...........................................................14, 15, 17, 22

*LegalForce RAPC Worldwide P.C. v. UpCounsel, Inc.*,
    No. 18-cv-02573-YGR, 2019 U.S. Dist. LEXIS 5061 (N.D. Cal. Jan. 10, 2019) ...............17

*Levitt v. Yelp! Inc.*,
    No. 10-cv-1321 MHP, 2011 U.S. Dist. LEXIS 99372 (N.D. Cal. Mar. 22, 2011)....17, 18, 20

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014)..........................................................................................*passim*

*Luxul Tech., Inc. v. Nectarlux, LLC*,
    78 F. Supp. 3d 1156 (N.D. Cal. 2015) .......................................................................6, 7, 9

*Mitcheson v. El Antro LLC*,
    No. 19-cv-01598, 2020 U.S. Dist. LEXIS 226473 (D. Ariz. Dec. 3, 2020) ...........................8

iii

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*,
    310 F. Supp. 3d 1089 (S.D. Cal. 2018) ................................................................. 9

*Openwave Messaging, Inc. v. Open-Xchange, Inc.*,
    No. 16-cv-00253-WHO, 2016 U.S. Dist. LEXIS 61951 (N.D. Cal. May 9, 2016) .............. 16

*R & A Synergy LLC v. Spanx, Inc.*,
    No. 2:17-cv-09147-SVW-AS, 2019 U.S. Dist. LEXIS 168266 (C.D. Cal. May 1, 2019) .... 10

*Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*,
    2015 U.S. Dist. LEXIS 49740 (N.D. Cal. Apr. 15, 2015) ....................................... 7

*Sigma Dynamics, Inc. v. E. Piphany, Inc.*,
    No. 04-cv-569-MJJ (EDL), 2004 U.S. Dist. LEXIS 24261 (N.D. Cal. May 21, 2004) ........ 16

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997) ...................................................................... 8, 10

*SPS Techs., LLC v. Briles Aero., Inc.*,
    No. 18-cv-9536-MWF, 2019 U.S. Dist. LEXIS 219610 (C.D. Cal. Oct. 30, 2019) ............. 21

*Swafford v. IBM*,
    383 F. Supp. 3d 916 (N.D. Cal. 2019) .............................................................. 13

*Tagtrends, Inc. v. Nordstrom, Inc.*,
    No. 13-cv-00563-JVS (JPRx), 2013 U.S. Dist. LEXIS 198811 (C.D. Cal. Aug. 15, 2013).... 7

*Tracht Gut, LLC v. L.A. Cty. Treasurer & Tax Collector*,
    836 F.3d 1146 (9th Cir. 2016) ......................................................................... 5

*Transfresh Corp. v. Ganzerla & Assoc.*,
    862 F. Supp. 2d 1009 (N.D. Cal. 2012) ........................................................... 11

*United States v. United Healthcare Ins. Co.*,
    848 F.3d 1161 (9th Cir. 2016) .................................................................... 5, 19

*Upper Deck Co. v. Panini Am., Inc.*,
    No. 20-cv-185-GPC(KSC),
    2020 U.S. Dist. LEXIS 114075 (S.D. Cal. June 29, 2020) .............................. 10, 12

*VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*,
    No. 2:09-cv-02067-MCE-GGH,
    2010 U.S. Dist. LEXIS 47453 (E.D. Cal. Apr. 20, 2010) .............................. 17, 21

*Wyndham Vacation Ownership v. Reed Hein & Assocs., LLC*,
    No. 6:18-cv-02171-GAP-DCI, 2019 U.S. Dist. LEXIS 140525 (M.D. Fla. Aug. 20, 2019)... 6

1

2

**<u>STATUTES</u>**

3  15 U.S.C. § 1125(a) .............................................................................*passim*

4  Cal. Bus. & Prof. Code §§ 17500–1509 ...................................................2

5  Cal. Bus. & Prof. Code §§ 17200–17210 .................................................2

6

7  **<u>OTHER AUTHORITIES</u>**

8

9  Local Rule 7-4................................................................................................2

10  Fed. R. Civ. P. 9(b) ....................................................................*passim*

11  Fed. R. Civ. P. 12(b)(6).............................................................................4

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lona's Lil Eats, LLC ("Lona's" or "Plaintiff") respectfully submits this opposition to the Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 29, filed by DoorDash, Inc. ("Defendant" or "DoorDash").

## INTRODUCTION

DoorDash, a company worth over $16 billion, partners with restaurants to provide ordering and delivery services. It then creates "landing pages" on its website and mobile app for these partner restaurants, which permit consumers to place orders through them. In exchange, DoorDash extracts large commissions and fees per sale. But this case is not about DoorDash's partner restaurants. It is about restaurants who choose *not* to partner with DoorDash and pay its excessive commissions.

For these non-partner restaurants—with whom it has no affiliation—DoorDash creates unauthorized landing pages. Using its massive market power, DoorDash is able to prioritize these landing pages at the top of internet search results, even above the restaurant's own website. These unauthorized pages look genuinely connected to the restaurant and are generally replete with hours of operation and a full menu. But on these pages, DoorDash makes false and misleading statements about the non-partner restaurants, including that they are "closed" when, in fact, they are open and that their services are "unavailable" when, in fact, they are available. DoorDash then markets its own partner restaurants, which DoorDash notes are open and available. In essence, DoorDash's landing pages created for non-partner restaurants are used as a type of bait-and-switch that relies upon existing market demand for those restaurants and then unfairly steers would-be customers to its partner restaurants for which it collects commissions and fees.

To illustrate the point, say a customer wanted to order takeout from Lona's. She would Google "Lona's" and "takeout" and then click on the first result. That result, DoorDash's fake landing page, would inform the customer that Lona's was closed. That customer, believing Lona's is not an option, is then presented with a host of DoorDash partner restaurants on its site and then would proceed to order takeout from that partner restaurant, which pays DoorDash a commission.

Lona's brings putative class action claims on behalf of restaurants, like itself, who are not DoorDash's partners but for whom DoorDash has created a landing page that includes unauthorized representations. Lona's alleges that DoorDash made three specific misrepresentations on the

unauthorized landing page that caused it, and similarly situated restaurants, to lose, and continue to lose, sales. As discussed in more detail below, Plaintiff alleges that on Doordash's fake landing pages, it affirmatively represents to consumers that non-partner restaurants are closed, cannot deliver to them, or are not accepting orders at the time—even when they are open, can deliver to them, and/or are accepting order at the time. These misrepresentations and DoorDash's predatory and anticompetitive behavior form the bases of Plaintiff's claims for false advertising under the Lanham Act, 15 U.S.C. § 1125(a), false advertising in violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500–1509, and unfair competition within the meaning of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–17210.

In its motion to dismiss, DoorDash flouts binding precedent and, as a result, lodges misplaced arguments, or it mischaracterizes and takes Plaintiff's allegations out of context. Plaintiff respectfully requests that the Court deny Defendant's motion in its entirety.

## ISSUES TO BE DECIDED

Pursuant to Local Rule 7-4, there are four issues to be decided on DoorDash's motion:

1. Whether Plaintiff has adequately alleged a false advertising claim under the Lanham Act?
2. Whether Plaintiff has adequately alleged a false advertising claim under the FAL?
3. Whether Plaintiff has sufficiently alleged a claim under the UCL?
4. Whether Plaintiff may pursue a claim for injunctive relief?

## STATEMENT OF THE FACTS

Lona's is a small-business restaurant. (¶ 17.)[1] Since COVID-19, like many restaurants, its business has centered on receiving and fulfilling take-out orders. (*See* ¶¶ 11, 35.) Because Lona's chose not to "partner" with DoorDash and pay its commissions, however, DoorDash made receiving and fulfilling take-out orders significantly more difficult. (*See* ¶¶ 14, 34.) Despite the fact that Lona's had no affiliation with DoorDash, DoorDash created a fake "landing page" for Lona's, replete with a full mock-up menu. (¶ 21.) In fact, using its immense market power, DoorDash forced its landing pages at the top of search results even before Lona's own webpage. (¶¶ 14, 21.) On this prioritized and fake webpage, DoorDash then misrepresented information about Lona's that steered

---

[1] All paragraph references herein are to the Amended Class Action Complaint, ECF No. 26, unless otherwise noted.

customers away from Lona's through DoorDash's platforms to Lona's competitors who did partner with DoorDash. As a result, DoorDash's services and commissions increased at the expense of Lona's. (*See* ¶¶ 3, 10, 13.) Lona's alleged that it has lost sales as a result of these misrepresentations and suffers lost future sales because consumers are less likely to attempt to order from Lona's in the future. (¶ 60.)

On these webpages and mobile app sites, Lona's specifically alleges that DoorDash made three different false or misleading misrepresentations about Lona's, and similarly situated restaurants, who have no affiliation with DoorDash.

First, in June 2020 and likely before, during pandemic lockdowns, DoorDash misrepresented Lona's as "closed" on the front of its unauthorized landing page, which was available on its website. (¶¶ 17–20.) This statement was literally false; Lona's was open for business and fulfilling orders. (¶ 17.) Some customers brought this to Lona's attention and indicated that they were confused by DoorDash's falsehood. (¶ 18.) In an attempt to rectify the misrepresentation, on June 5, 2020, Lona's posted on its Facebook page that it was, contrary to DoorDash's misrepresentation, open for business. (*Id.*) While at some point this false representation was removed, the damage was already done, and Lona's had lost sales and future sales due to the falsehoods DoorDash made online. (*See* ¶¶ 19–20, 60.)

Second, at least during the summer of 2020, and certainly on August 18, 2020 (¶ 21 n.2), DoorDash's fake webpage for Lona's, available on web browsers, represented Lona's as "unavailable" because it was "too far away" for delivery. (¶¶ 21–26.) And this misrepresentation remains on DoorDash's mobile app landing page for Lona's. (¶¶ 28–29.) While Lona's did not make delivery orders, it was not because it was "too far away" but because Lona's was not a partner restaurant and would not pay DoorDash's exorbitant fees. (¶ 25.) The designation misled consumers to think that Lona's was "unavailable" because it was "too far away," and a consumer likely understood this to mean that Lona's is not close to them and is not an option. (*See* ¶¶ 23, 25, 33.) This designation was not limited to the checkout page, and if, for example, the customer had previously entered her address on the DoorDash website or app, then the "unavailable" designations would show up on the initial landing page. (*See* ¶¶ 15, 21, 28.) Although, since this litigation,

DoorDash removed its fake webpage available on web browsers—but not its app—representing that Lona's was "too far away" for delivery, the damage was already done, and consumers were pushed to DoorDash's partners, for which DoorDash collected its commissions. (*See* ¶¶ 15, 23, 25.)

Finally, DoorDash misrepresented and continues to misrepresent that Lona's is "unavailable" for pick-up orders on its mobile application. (¶¶ 27–31.) Instead, running a search on a smartphone browser (e.g., iPhone's Safari browser) results in a link to DoorDash's mobile app and Lona's landing page thereon. (¶ 28.) From there, DoorDash indicates that ordering pick-up is an option for Lona's. (¶ 30.) But when selected, it then states that pick-up from Lona's is "unavailable." (¶¶ 30–31.) This is false. Lona's is available for placing and fulfilling pick-up orders. (*Id.*) Not stopping there, DoorDash then corrals customers to "See other stores," by which it markets DoorDash's local partner restaurants so that DoorDash can make a sale and earn a commission. (¶¶ 10, 31.) Would-be Lona's customers who view this misrepresentation are, therefore, turned away from ordering pick-up from Lona's, and are pushed to make purchases from Defendant's partners, for which DoorDash collects its commissions. (*Id.*)

DoorDash suggests, "to the extent that DoorDash partner restaurants receive orders that Lona's does not, that is a result of Lona's own decision not to partner with DoorDash and to have its named [sic] removed from DoorDash's platform." Mot. at 21. This statement is telling. Lona's did not want to partner with DoorDash or pay its fees, nor did Lona's ask DoorDash to set up a fake website for it. And it especially never asked DoorDash to misrepresent it as "closed" or "unavailable." Instead, DoorDash unilaterally created a fake webpage for Lona's in order to take advantage of Lona's existing market demand and then steer those customers through its platform to Lona's competitors so that DoorDash could strong-arm Plaintiff into partnering with it and thereby gain commissions. (¶¶ 14, 32, 34.) Thus, it is precisely because DoorDash created a fake, unauthorized webpage for Lona's that looked legitimate but was replete with misrepresentations that Lona's lost sales to competitors who paid DoorDash commissions.

## STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to Plaintiff. *Davis v. HSBC Bank*, 691 F.3d 1152, 1159 (9th

Cir. 2012). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of Plaintiff. *Tracht Gut, LLC v. L.A. Cty. Treasurer & Tax Collector*, 836 F.3d 1146, 1150 (9th Cir. 2016).

While Rule 9(b) applies to allegations of fraud, plaintiff must allege "the who, what, when, where, and how," *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1110 (9th Cir. 2017), but only "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

## ARGUMENT

### I.   Lona's Adequately Pleads a Lanham Act Claim Under § 1125(a)

The Lanham Act was intended "to protect persons engaged in . . . commerce against unfair competition," including false advertising, that causes reputational harm or lost sales. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131 (2014) (quoting 15 U.S.C. § 1127). DoorDash's false and misleading statements about Lona's fits that bill.

DoorDash's motion ignores binding authority, misstates applicable standards, and mischaracterizes Plaintiff's pleadings. To start, because the parties need not be direct competitors and because DoorDash's misrepresentations caused would-be customers to withhold trade from Plaintiff, Lona's correctly brings false advertising claims against DoorDash. In addition, Plaintiff adequately pleads the remaining elements of a false advertising claim.

### A.   Lona's, as a Restaurant, May Pursue a Lanham Act Claim Against DoorDash

In order to pursue a false advertising claim under the Lanham Act § 1125(a), Plaintiff need only establish that it falls within the statute's "zone of interest" and that its commercial injuries were proximately caused by DoorDash's misrepresentations. *See Lexmark*, 572 U.S. at 131–34. In other words, Plaintiff need only allege "an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark*, 572 U.S. at 140. Lona's, a restaurant, easily satisfies that test as it lost sales and continues to lose sales as a result of

DoorDash's fake webpage it created for Lona's upon which it falsely advertised Lona's as "closed," "unavailable"/"too far away" for delivery, and "unavailable" for pick-up orders. (¶¶ 17–33, 60.)

"[T]o come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Lexmark*, 572 U.S. at 131–32. Here, Plaintiff has alleged that it lost both past and future sales as a result of Doordash's false advertising. (¶¶ 15, 20, 34, 60, 63.) Such lost sales are sufficient to bring Lona's within the zone of interest. *Lexmark*, at 572 U.S. at 137 ("[L]ost sales . . . are injuries to precisely the sorts of commercial interests the Act protects."); *see also Luxul Tech., Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015) (applying *Lexmark* and holding that plaintiff sufficiently alleged "lost sales and profits . . . as a result of Defendants' misbranding of Plaintiff's products, false advertising, and misrepresentations to third-parties . . . .").

Moreover, DoorDash's misrepresentations proximately caused (and are causing) Lona's lost sales. The proximate cause inquiry asks only "whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Lexmark*, 572 at 133. There is a direct, and obvious, link between DoorDash's misrepresentations that Lona's was "closed" or "unavailable," when it was open and available, and Lona's lost sales. (*See* ¶¶ 15, 20, 34, 60, 63.) All of DoorDash's deceptive acts alleged in this case resulted in customer sales being diverted through DoorDash's platforms to one of DoorDash's partners, which increased its commissions. (¶¶ 10, 34.) In other words, DoorDash's misrepresentations that Lona's was "closed" or "unavailable" caused consumers to withhold trade from Plaintiff. *See Lexmark*, 572 at 133 (noting that proximate cause is satisfied "when deception of consumers causes them to withhold trade from the Plaintiff"). That is sufficient. *See Lexmark*, 572 U.S. at 138 (quoting *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 657 (2008)) ("[A] defendant who 'seeks to promote his own interests by telling a known falsehood to or about the plaintiff or his product' may be said to have proximately caused the plaintiff's harm."); *see also Wyndham Vacation Ownership v. Reed Hein & Assocs., LLC*, No. 6:18-cv-02171-GAP-DCI, 2019 U.S. Dist. LEXIS 140525, at *11–12 (M.D. Fla. Aug. 20, 2019) (citation omitted) (noting "causation just requires that the false advertising proximately cause the claimed injury—it need not be the only cause or even the predominant cause of the injury").

Contrary to DoorDash's arguments, there is no longer any requirement that Plaintiff and DoorDash be *direct* competitors. Indeed, the Supreme Court specifically rejected the Ninth Circuit's old rule that the parties be direct competitors. *Lexmark*, 572 U.S. at 136 ("It is thus a mistake to infer that because the Lanham Act treats false advertising as a form of unfair competition, it can protect *only* the false-advertiser's direct competitors."); *Luxul*, 78 F. Supp. 3d at 1170 ("[T]he United States Supreme Court has recently held that a plaintiff need not be a direct competitor with a defendant to bring a false advertising claim under the Lanham Act."). Without citing or referencing *Lexmark*, however, DoorDash makes at least two arguments seeking to re-insert a direct-competitor requirement into the elements of a § 1125(a) false advertising claim. After *Lexmark*, that cannot be.[2]

First, DoorDash argues that because it and Lona's are not direct competitors, they are not in "commercial competition" with each other, and, thus, DoorDash's misrepresentations were not "commercial advertisements or promotions" under the statute. Mot. § I.B.2. But, again, *Lexmark* forecloses any requirement that the parties be direct competitors. *Lexmark*, 572 U.S. at 136; *see also Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, 700 F. App'x 251, 256 (4th Cir. 2017) (rejecting, after *Lexmark*, "the second factor [of the commercial advertisement test] requiring a competitive relationship"). Indeed, with one exception, all of the cases DoorDash relies upon predate the 2014 *Lexmark* decision.[3] And even attempting to read prior, partly abrogated Ninth

---

[2] Any argument in reply, that *Lexmark* was limited to standing and, therefore, does not affect any elements of a false advertising claim is disingenuous. The Court noted that it was discussing elements derived from statutory interpretation—not merely standing. *See Lexmark*, 572 U.S. at 127–28 (finding that prudential standing was a misnomer and instead "we ask whether [plaintiff] has a cause of action under the statute"); *id.* at 134 n.6 ("Like the zone-of-interests test, . . . [proximate causation] is an element of the cause of action under the statute . . . .").

[3] *See Bernard v. Donat*, No. 11-cv-03414-RMW, 2012 U.S. Dist. LEXIS 19791, at *3–4 (N.D. Cal. Feb. 16, 2012) (applying the direct-competitor test to dismiss the false advertising claim based on standing) (citing *Halicki v. United Artists Communications, Inc.*, 812 F.2d 1213, 1214 (9th Cir. 1987)); *Tagtrends, Inc. v. Nordstrom, Inc.*, No. 13-cv-00563-JVS (JPRx), 2013 U.S. Dist. LEXIS 198811, at *11–13  (C.D. Cal. Aug. 15, 2013) (dismissing false advertising claims because the parties were not direct commercial competitors) (citing *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1052 (9th Cir. 2008)). And the only case DoorDash cites after *Lexmark* is *Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*, 2015 U.S. Dist. LEXIS 49740, at *31 (N.D. Cal. Apr. 15, 2015), where the Court did not even discuss the Lanham Act but instead discussed "competitors" in relation to determining a violation of a protective order. Lastly, DoorDash relies on *Halicki*, which the Ninth Circuit later clarified endorsed the direct-competitor test to establish standing. *See*

1  Circuit precedent as consistent with *Lexmark*, "commercial competition" at most means that the

2  "alleged false advertising harmed the plaintiff's ability to compete in the marketplace . . . ." *See*

3  *Mitcheson v. El Antro LLC*, No. 19-cv-01598, 2020 U.S. Dist. LEXIS 226473, at *49 (D. Ariz. Dec.

4  3, 2020). Here, unlike a case where a "consumer . . . is hoodwinked into purchasing a disappointing

5  product," *Lexmark*, 572 U.S. at 132, DoorDash misrepresented that Lona's, a business, was closed

6  and unavailable on unauthorized webpages and, thereby, diverted would-be customers from Lona's

7  through itself to its partner restaurants, and, thus, it unfairly harmed Plaintiff's ability to compete

8  in the marketplace. (¶¶ 17–34, 60.)

9       Second, DoorDash argues that Lona's has not sufficiently alleged an injury because Lona's

10  did not "allege that it competes directly with DoorDash . . . ." Mot. at § I.D., 20–21. That argument

11  again flouts *Lexmark*. And DoorDash relies solely on precedent that predates and was abrogated by

12  *Lexmark*. DoorDash cites *Jack Russel Terrier Network of Northern California v. American Kennel

13  Club*, 407 F. 3d 1027, 1037 (9th Cir. 2005), which held that the plaintiff there did not have standing

14  to pursue a claim under the Lanham Act because plaintiff and defendant were not direct

15  competitors—that is no longer good law. DoorDash also cites *Southland Sod Farms v. Stover Seed

16  Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997), for the proposition that a plaintiff must allege a "direct

17  diversion of sales from itself to defendant . . . ." But that too is no longer good law. In *Lexmark*, in

18  fact, there was not a direct diversion of sales from the plaintiff to the defendant because the parties

19  there were *not* direct competitors. 572 U.S. at 138 ("But although diversion of sales to a direct

20  competitor may be the paradigmatic direct injury from false advertising, it is not the only type of

21  injury cognizable under § 1125(a)."). Instead, like here, defendant made misrepresentations to

22  plaintiff's customers, and the customers, in turn, "withheld trade" from plaintiff. *Id.* at 133; *id.* at

23  139 (citing *Blue Shield of Va. v. McCready*, 457 U.S. 465, 479 (1982)). That is sufficient to establish

24  proximate cause between the commercial injury and the misrepresentations. *See id.*

25

26

27  *Barrus v. Sylvania*, 55 F.3d 468, 469–70 (9th Cir. 1995) (explaining that under *Halicki* and *Waits

28  v. Frito-Lay, Inc.*, 978 F.2d 1093, 1110 (9th Cir. 1992), plaintiff and defendant must be in "actual
competition"). And in *Lexmark*, the Supreme Court cited *Waits* in rejecting the Ninth Circuit's
direct-competitor test. 572 U.S. at 123, 136.

Relatedly, without citing any case law, DoorDash argues that Plaintiff has not "pled any plausible theory of damages" because it has not identified any misled consumers Mot. 21. That is not the stuff of a motion to dismiss. And Plaintiff clearly alleged that some consumers in fact saw the landing pages, ¶ 18, who were almost deceived—and the ones who were deceived would not be known, at this stage, because the deception worked. To illustrate, if a customer wants to order food now and sees a representation (at the top of search results) that the restaurant is "closed" or "unavailable," then she does not typically call to confirm (and especially when the look-alike page seems legitimate); she just orders from some other restaurant.

Any requirement that Plaintiff and Defendant be direct competitors would be in direct conflict with the *Lexmark*. At this stage, Lona's has sufficiently alleged that it suffered a loss of sales as a result of DoorDash's misrepresentations on DoorDash's fake Lona's websites and app.

### B.   Lona's Adequately Pleads the Remaining Elements of a Lanham Act Claim

To state a claim for false advertising, plaintiff must allege:

> (1) a statement made in an advertisement is false or misleading; (2) that "it actually deceives or has the tendency to deceive a substantial segment of its audience"; (3) that it is "likely to influence purchasing decisions"; and (4) that the "plaintiff has been or is likely to be injured by the false advertisement."

*Luxul*, 78 F. Supp. 3d at 1172 (N.D. Cal. 2015) (quoting *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 828–29 (9th Cir. 2011)). As discussed above, Plaintiff has satisfied the fourth element, injury, in light of *Lexmark*. And DoorDash does not dispute the third element, which is materiality.[4] Moreover, as discussed below, Plaintiff adequately alleged the remaining first and second elements.

1.   <u>Lona's sufficiently alleged three false or misleading statements made by DoorDash that actually deceive or have a tendency to deceive consumers.</u>

Part of the first element and the entire second element, falsity and deception, are typically considered together. *See, e.g.*, *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 310 F. Supp. 3d 1089, 1124 (S.D. Cal. 2018) (addressing "falsity and deception together . . . is consistent with Ninth Circuit case law"). "To demonstrate falsity within the meaning of the Lanham Act, a

---

[4] *See, e.g.*, *Bobbleheads.com, Ltd. Liab. Co. v. Wright Bros., Inc.*, 259 F. Supp. 3d 1087, 1099 (S.D. Cal. 2017) ("Defendants will have an opportunity to attack the materiality of these statements at a later phase of the case—but not now.").

1   plaintiff may show that the statement was literally false, either on its face or by necessary

2   implication, or that the statement was literally true but likely to mislead or confuse consumers."

3   *Southland Sod Farms*, 108 F.3d at 1139.

4       At the pleading stage, plaintiff need not provide evidentiary proof of actual or likely

5   deception. *See, e.g.*, *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 636 (N.D.

6   Cal. 2019); *R & A Synergy LLC v. Spanx, Inc.*, No. 2:17-cv-09147-SVW-AS, 2019 U.S. Dist.

7   LEXIS 168266, at *38 (C.D. Cal. May 1, 2019) ("[T]he Court recognizes that consumer deception

8   is typically proved through consumer surveys, which may be appropriately conducted during the

9   discovery phase."); *Axis Imex, Inc. v. Sunset Bay Rattan, Inc.*, No. 08-cv-3931-RS, 2009 U.S. Dist.

10  LEXIS 2667, at *11 (N.D. Cal. Jan. 7, 2009) (rejecting that a "false advertising claim should be

11  dismissed because it fails to aver evidence of actual or likely deception to purchasers"). And when

12  a statement is literally false, deception is presumed at the pleading stage. *E.g.*, *Factory Direct*

13  *Wholesale, LLC v. Itouchless Housewares & Prods.*, 411 F. Supp. 3d 905, 924 (N.D. Cal. 2019)

14  (quoting *AECOM Energy & Constr., Inc. v. Ripley*, 348 F. Supp. 3d 1038, 1056 (C.D. Cal. 2018))

15  ("With regard to the second element, 'where a statement is literally false or the defendant

16  intentionally set out to deceive, . . . actual deception' is presumed."); *accord Upper Deck Co. v.*

17  *Panini Am., Inc.*, No. 20-cv-185-GPC(KSC), 2020 U.S. Dist. LEXIS 114075, at *17 (S.D. Cal. June

18  29, 2020).

19      Accordingly, at the pleading stage, to sufficiently allege falsity *and* actual or likely

20  deception "the plaintiff need only allege specific misleading statements and explain why they are

21  misleading in accordance with Rule 9(b)." *Clorox Co.*, 398 F. Supp. 3d at 636. And Rule 9(b) only

22  requires that plaintiff allege sufficient facts to "give defendants notice of the particular misconduct

23  and set out what is false or misleading." *Biocell Tech. LLC v. Arthro-7*, No. 12-cv-00516-JVS

24  (RNBx), 2012 U.S. Dist. LEXIS 196044, at *31 (C.D. Cal. Nov. 19, 2012) (quoting *Vess v. Ciba-*

25  *Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). Here, Plaintiff alleges that DoorDash made

26  two literally false statements and one statement that was true but likely to mislead consumers.

27      First, Lona's alleges that at least in June 2020, DoorDash specifically and falsely

28  represented that Lona's was "closed" when it was in fact open. (¶¶ 17–20.) This was literally false.

10

1  (¶ 18.) DoorDash made this statement to would-be Lona's customers. (¶ 18.) The false "closed"

2  statement was made on DoorDash's landing page for Lona's, which was on DoorDash's website.

3  (¶ 17.) Thus, Plaintiff sufficiently alleged the who (DoorDash), what ("closed"), when (June 2020),

4  where (Lona's landing page), and how (website) to put DoorDash on notice of the particular

5  misconduct alleged. *See, e.g.*, *Biocell*, 2012 U.S. Dist. LEXIS, at *31; *Bobbleheads.com*, 259 F.

6  Supp. 3d at 1096 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)) (noting, under Rule

7  9(b), that courts "do not require a . . . a precise time frame").

8      Contrary to DoorDash's nit-picky and out-of-context arguments, nothing more is needed at

9  this stage. DoorDash complains that Plaintiff did not provide a screenshot of the "closed" statement

10  nor identified consumers by name who saw the misrepresentation. Mot. at 15–16. But Plaintiff

11  identified the specific false statement. *See Clorox Co.*, 398 F. Supp. 3d at 636. Although not

12  required, Plaintiff also provided a screenshot from June 5, 2020, in which Plaintiff posted on its

13  Facebook page that DoorDash was misrepresenting it as "closed" online. (¶ 18.) From that

14  screenshot in response to that misrepresentation, it is not just plausible but self-evident that the

15  misrepresentation existed on June 5, 2020. Lona's posted that on FaceBook because *some*

16  consumers called to ask if it was true, but it is, at this stage, unknown how many others saw it and

17  did not call. *Id.*; *see also, e.g.*, *23andMe, Inc. v. Ancestry.com DNA, LLC*, 356 F. Supp. 3d 889, 910

18  (N.D. Cal. 2018) (internet misrepresentations actionable without identifying the specific consumers

19  who saw the falsity). Not even the case DoorDash relies upon supports its position as to statements

20  made on a website: "Plaintiff identifies specific statements, the source of the statements

21  ([DoorDash]), and where they can be found (the Website), as well as including allegations

22  explaining why the statements are false and misleading." *Transfresh Corp. v. Ganzerla & Assoc.*,

23  862 F. Supp. 2d 1009, 1019 (N.D. Cal. 2012).

24      Second, Lona's alleges that DoorDash falsely represented and is still representing that

25  Lona's was "unavailable" for pick-up orders. (¶¶ 27–31.) This is literally false because Plaintiff

26  was and is available for pick-up orders. (¶ 30.) DoorDash made this statement to would-be Lona's

27  customers. (¶¶ 28, 30.) The false "unavailable" for pick-up orders statement is on DoorDash's

28  landing page, on its mobile app, for Lona's. (¶ 30.) Thus, Plaintiff sufficiently alleged the who

11

(DoorDash), what ("unavailable" for pick-up), when (past and present), where (Lona's landing page), and how (mobile app) to put DoorDash on notice of the particular misconduct alleged. *See, e.g.*, *Biocell*, 2012 U.S. Dist. LEXIS, at *31; *Bobbleheads.com*, 259 F. Supp. 3d at 1096 (quoting *Cooper*, 137 F.3d at 627).

While unclear whether DoorDash disputes the sufficiency of the allegations for this claim, even assuming it does, none of its specificity arguments have merit as they attempt to apply the wrong legal standard or are flatly contradicted by the allegations. *See* Mot. at 15. Plaintiff need not identify consumers who saw the falsehood. *See, e.g.*, *23andMe, Inc.*, 356 F. Supp. 3d at 910. Further, Plaintiff identified the timeframe of the falsehood and included the date the mobile-app screenshots were taken, November 11, 2020. (¶ 28 n.3.)

Third, Lona's alleges that DoorDash misrepresented that it was "unavailable" for delivery services as "too far away." (¶¶ 21–26.) This misrepresentation was on its website. (¶ 21.) And it is still available on DoorDash's mobile app. (¶¶ 28–29.) While this statement is partially true, as Lona's does not provide delivery services, it is misleading because it indicates that Lona's is "too far away" from prospective customers. *See, e.g.*, *Upper Deck Co.*, 2020 U.S. Dist. LEXIS 114075, at *15 (citations omitted) ("[A] statement can be literally true, but nevertheless misleading in the way it is presented."). This statement that Lona's is "unavailable" because it is "too far away" may mislead a reasonable consumer to think that Lona's is not located close to her and is not an option. *See 23andMe, Inc.*, 356 F. Supp. 3d at 909 ("[I]t is a question of fact as to whether a reasonable consumer could be misled."). But Lona's is not too far away, and it is a closely located option for quick, easy pickup and takeout. (¶¶ 33, 60.) In fact, the real reason DoorDash represents Lona's as "unavailable"/"too far away" is because it chose not to partner with DoorDash and pay its fees— but DoorDash chose to create a fake landing page for it. (¶¶ 25, 34.) This allegation satisfies the pleading standard as Plaintiff alleged the who (DoorDash), what ("unavailable" for delivery as "too far away"), when (past and present), where (Lona's landing page), and how (mobile app and website) to put DoorDash on notice of the particular misconduct alleged. *See, e.g.*, *Biocell*, 2012 U.S. Dist. LEXIS, at *31; *Bobbleheads.com*, 259 F. Supp. 3d at 1096 (quoting *Cooper*, 137 F.3d at 627).

1    Plaintiff has specifically alleged three false or misleading statements, which put DoorDash

2    on notice of its misconduct. Moreover, DoorDash knows what is on its own website and app and

3    knows its own algorithms that may alter them. DoorDash's arguments under Rule 9(b) are

4    meritless.[5]

5              2.    <u>DoorDash's misrepresentations about Lona's are actionable "commercial</u>

6                    <u>advertisement or promotion."</u>

7    The Lanham Act prohibits false or misleading statements in "commercial advertising or

8    promotion," and that has always been understood to be "broader than merely the 'classic advertising

9    campaign.'" *Gordon & Breach Sci. Publishers, Ltd. v. Am. Inst. of Physics*, 859 F. Supp. 1521,

10   1534–35 (S.D.N.Y. 1994). The historic test for whether misrepresentations are made in a

11   "commercial advertisement or promotion" is set forth in the four-factor test of *Coastal Abstract*

12   *Services v. First American Title Insurance Co.*, 173 F.3d 725, 735 (9th Cir. 1999) (quoting *Gordon*

13   *& Breach*, 859 F. Supp. at 1535–36). While the Ninth Circuit has not overruled the *Coastal* test, it

14   is clear that *Lexmark* altered at least the second factor, which formerly required direct competition.

15   *See Genus Lifesciences Inc. v. Lannett Co.*, 378 F. Supp. 3d 823, 844 (N.D. Cal. 2019); *Ariix, LLC*

16   *v. Nutrisearch Corp.*, No. 17-cv-320-LAB (BGS), 2018 U.S. Dist. LEXIS 48527, at *8–9 (S.D.

17   Cal. Mar. 23, 2018) ("But the first and fourth elements were not implicated by *Lexmark's* holding,

18   and remain good law."); *Handsome Brook Farm*, 700 F. App'x at 257 ("As a result [of *Lexmark*],

19   we adopt only the first, third, and fourth factors of the *Gordon & Breach* test."). Accordingly, after

20   *Lexmark*, statements are actionable "commercial advertisements or promotions" when they are: (1)

21   commercial speech by defendant (2) for the purpose of influencing consumers to use defendant's

22   services (3) that is "disseminated sufficiently to the relevant purchasing public to constitute

23   'advertising' or 'promotion' within that industry." *See Ariix*, 2018 U.S. Dist. LEXIS 48527, at *8–

24   9; *Handsome Brook Farm*, 700 F. App'x at 257.

25

26

27   _____

[5] To the extent that the Court finds any factual deficiencies, Plaintiff requests leave to amend, as

28   Plaintiff could rectify any shortcoming with further allegations. *See, e.g.*, *Swafford v. IBM*, 383 F.
     Supp. 3d 916, 926 (N.D. Cal. 2019) (citation omitted) (noting that leave to amend "shall be freely
     given when justice so requires").

13

1    Lona's has alleged the first element, "commercial speech," in which plaintiff need only

2    allege that the "speech [does] no more than propose a commercial transaction." *Ariix*, 2018 U.S.

3    Dist. LEXIS 48527, at \*9 (quoting *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003)).

4    This requirement is primarily to ensure constitutional protection of free speech and should rest on

5    "the commonsense distinction between speech proposing a commercial transaction . . . and other

6    varieties of speech." *Genus*, 378 F. Supp. 3d at 845 (quoting *Bolger v. Youngs Drug Prods. Corp.*,

7    463 U.S. 60, 64 (1983)). Here, DoorDash's representations made on its website and app were made

8    to propose a sale of its services, DoorDash had an economic motive (i.e., increasing its commissions

9    and strong-arming Plaintiff to partner with it), and the speech is not a matter of public concern.

10   (¶¶ 14–15.) Although DoorDash labels an argument that its speech did not constitute "commercial

11   speech," it does not actually dispute this element but instead disputes the third element of the test,

12   which is discussed below. *See* Mot. § I.B.1. Thus, Plaintiff has undisputedly alleged "commercial

13   speech."

14   Turning to the second element, Lona's alleged that DoorDash's misrepresentations were

15   made to influence consumers to order through DoorDash. Specifically, DoorDash misrepresented

16   the availability of Plaintiff's services and products and then pushed consumers to its partner

17   restaurants in order to increase its own commissions. (*E.g.*, ¶¶ 14–15.) Therefore, Plaintiff has

18   alleged that DoorDash's misrepresentations were intended to influence consumers to purchase

19   DoorDash's services. *Cf. L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 865 (N.D.

20   Cal. 2015) (holding that a statement on an emailed Uber receipt, received after the transaction was

21   completed, was "made for the purpose of influencing consumers to use Uber's services again").

22   DoorDash resists Plaintiff's allegations by arguing that its misrepresentations about Lona's

23   did not influence consumers to buy DoorDash's "products" but instead influenced them to purchase

24   its partner restaurants' food. Mot. § I.B.3. This is a distinction without a difference. DoorDash

25   makes money when a customer orders from one of its partner restaurants but not when the customer

26   orders from Lona's. It is a zero-sum game; DoorDash's misrepresentations diverted food purchases

27   from Lona's to a DoorDash partner in order to increase DoorDash's commissions; every dollar

28   diverted to a partner is a dollar lost by Lona's. At best, its arguments here are thinly veiled attempts

14

to require that the parties be direct competitors and that sales be diverted from plaintiff directly to defendant. As noted above, that is no longer the law. *See supra* § I.A.[6] Similarly, DoorDash argues that courts do not permit Lanham Act claims where the misrepresentations influenced consumers to purchase third parties' products. Mot. at 19. Perhaps that is true in cases where defendant is merely listing information in a database and is not actually selling a related service. *See Alfasigma USA, Inc. v. First Databank, Inc.*, 398 F. Supp. 3d 578, 591 (N.D. Cal. 2019) (holding plaintiff, a pharmaceutical manufacturer, did not allege that defendant, maintainer of a drug database, "made the allegedly false and misleading statements for the purpose of influencing consumers to subscribe to its MedKnowledge database"). But that is a far cry from the facts here where DoorDash offers ordering, pick-up, and delivery services for its partner restaurants and receives extraordinary commissions on each sale made through its platforms. (¶¶ 2–3, 10, 25.) Accordingly, DoorDash's misrepresentations influenced consumers to pay for DoorDash's services.

Finally, as to the third element, Lona's alleged that DoorDash's misrepresentations were "disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Coastal Abstract*, 173 F.3d at 735. "[T]he primary focus is the degree to which the representations in question explicitly target relevant consumers." *Gordon & Breach*, 905 F. Supp. at 182. Here, DoorDash explicitly targeted Lona's would-be customers who searched for Lona's online. (¶ 32.) And by virtue of its market power, DoorDash was able to prioritize its own fake website over Lona's real website in search results. (¶ 21.) Accordingly, any would-be customer of Lona's who searched for it online would have seen DoorDash's misrepresentations. (*See* ¶¶ 21, 31.) Indeed, some consumers reported seeing these fake landing pages on DoorDash's platforms. (¶ 18.) Given the internet age, where Google searches are used to find everything, including hours of operation and phone numbers, it is not difficult to conclude that DoorDash's internet misrepresentations targeting would-be Lona's consumers satisfies this

---

[6] DoorDash argues its misrepresentations were not made to "convince customers to purchase DoorDash's product. Nor could it. DoorDash is a technology company. It does not sell food." The absurdity of DoorDash's argument is underscored with an analogy. DoorDash arguing that it does not sell food is like Uber arguing it does not sell taxi services. *See L.A. Taxi Coop*, 114 F. Supp. 3d at 865 (permitting false advertising claims under the Lanham Act to proceed in a case brought by taxi companies against Uber).

element. *See, e.g.*, *Doctor's Assocs. v. QIP Holder LLC*, No. 3:06-cv-1710(VLB), 2010 U.S. Dist. LEXIS 14687, at *65 (D. Conn. Feb. 19, 2010) ("[T]he Defendants made these representations available to anyone with internet access and thus widely disseminated them to the purchasing public."); *accord Glob. Tech LED, Ltd. Liab. Co. v. HiLumz Int'l Corp.*, No. 2:15-cv-553-FtM-29CM, 2017 U.S. Dist. LEXIS 20512, at *13–14 (M.D. Fla. Feb. 14, 2017).

DoorDash's arguments as to this element are also wrong. Hanging its hat on one screenshot—and ignoring the rest of the complaint—DoorDash argues that its misrepresentations were merely a few isolated statements made with respect to a few consumers. Mot. § I.B.1. To start, Plaintiff here alleged that DoorDash systematically made these misrepresentations on its search-engine prioritized landing pages, which targeted any Lona's customer who searched for it online. (*See* ¶¶ 3, 14–15, 21, 31.) The screenshots of the check-out pages were examples. *Sigma Dynamics, Inc. v. E. Piphany, Inc.*, No. 04-cv-569 MJJ (EDL), 2004 U.S. Dist. LEXIS 24261, at *7 (N.D. Cal. May 21, 2004) ("As statements on websites . . . are generally available to the public at large, they satisfy the commercial speech requirement for purposes of a motion to dismiss. . . . ."); *see also 1524948 Alberta Ltd. v. Lee*, No. 1:10-cv-02735-RWS, 2011 U.S. Dist. LEXIS 77365, at *14 (N.D. Ga. July 15, 2011) (holding that defendant's "website, which targeted [plaintiff's] customers," sufficiently disseminated the false statements). Clearly, this is not the case, as Defendant tries to characterize it, where a few oral representations were made in a few business discussions. *See Openwave Messaging, Inc. v. Open-Xchange, Inc.*, No. 16-cv-00253-WHO, 2016 U.S. Dist. LEXIS 61951, at *15 (N.D. Cal. May 9, 2016).

Accordingly, Lona's has alleged that DoorDash's misrepresentations constituted a "commercial advertisement or promotion" under the applicable three-prong test. *See, e.g.*, *Arrix*, 2018 U.S. Dist. LEXIS 48527, at *8–9; *Handsome Brook Farm*, 700 F. App'x at 257.

**C.    Plaintiff's FAL and UCL Claims Should Not Be Dismissed Based Upon the Lanham Act Claim**

As detailed herein, Plaintiff has properly pleaded a valid claim under the Lanham Act. Accordingly, to the extent that Defendant seeks to predicate dismissal of the UCL and FAL claims upon the purported failure of the Lanham Act claim, those arguments must be summarily

1    disregarded. Moreover, there are independent bases for a viable UCL claim that are separate and

2    distinct from the false advertising allegations that form the basis for the Lanham Act claim. As set

3    forth in Section IV *infra*, the claims are not "substantially congruent" on these facts.[7]

4    **II.**    **Standing Exists Under the FAL and UCL**

5       In 2004, California voters passed Proposition 64, which altered the standing requirements

6    for plaintiffs under California's UCL and FAL. Under this new standard, "a party must now (1)

7    establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e.,

8    economic injury, and (2) show that economic injury was the result of, i.e., caused by, the unfair

9    business practice or false advertising that is the gravamen of the claim." *Levitt v. Yelp! Inc.*, No.

10    10-cv-1321 MHP, 2011 U.S. Dist. LEXIS 99372, at \*24 (N.D. Cal. Mar. 22, 2011) (citing *Kwikset*

11    *Corp. v. Superior Court*, 246 P.3d 877 (Cal. 2011)). While both statutes do require "economic

12    injury," the California Supreme Court has clarified that the injury need not be substantial and may

13    be satisfied by a mere "identifiable trifle." *Kwikset*, 246 P.3d at 891 n.15.

14       Simply put, this standard is readily satisfied by the allegations of Plaintiff's Amended

15    Complaint. Plaintiff has alleged an unfair business practice and false statements made in advertising

16    of Defendant's services and that it has sustained economic loss in the form of lost revenues,

17    business, and goodwill as a result. (*See* ¶¶ 3, 14–18, 20–23, 25–30, 34, 68, 71, 77–78.) Critically,

18    Plaintiff alleges that the injury occurred as a result of the improper and unfair conduct at issue—

19    even though the representations that formed the basis for that conduct were not directed at it. This

20    satisfies the standard for standing identified in *Kwikset*,[8] and courts have permitted FAL and UCL

21    claims to proceed under similar circumstances where the conduct at issue was directed to the public

22    at large. *See, e.g.*, *LegalForce RAPC Worldwide P.C. v. UpCounsel, Inc.*, No. 18-cv-02573-YGR,

23    2019 U.S. Dist. LEXIS 5061, at \*29-30 (N.D. Cal. Jan. 10, 2019) (UCL and FAL claims allowed

24    to proceed based upon representations made to the general public); *VP Racing Fuels, Inc. v. Gen.*

25    *Petroleum Corp.*, No. 2:09-cv-02067-MCE-GGH, 2010 U.S. Dist. LEXIS 47453, at \*7–9 (E.D.

26

27    [7] In this respect, the matter is readily distinguishable from the FAL and UCL claims asserted in *L.A.*

28    *Taxi*; the plaintiffs in that case did not dispute that the UCL and FAL claims were based purely
upon misrepresentations in false advertisements. *L.A. Taxi Coop., Inc.*, 114 F. Supp. 3d at 863 n.3.
[8] *Kwikset*, 246 P.3d at 884–85.

Cal. Apr. 20, 2010) (finding UCL and FAL standing, noting "Plaintiff has been injured by consumer reliance upon Defendant's misrepresentations which have resulted in competitive harm and diverted sales").

The *Levitt* case is instructive on the standing issue. In that case, plaintiffs were business owners who were challenging Yelp's practice of manipulating the online reviews posted on its website. 2011 U.S. Dist. LEXIS 99372, at *5–6. Plaintiffs alleged that as a result of this practice, incorrect information that was damaging to their businesses were disseminated to the general public, and it was used as a way to pressure them into a relationship with Yelp. *Id.* Put another way, plaintiffs in that suit challenged defendant's presentation of information not to them, but to the general public, and alleged damage as a result—which, of course, is the same sort of behavior at issue here. This Court determined that under the standing requirements created by Proposition 64, the plaintiff businesses had standing to pursue their UCL and FAL claims. *Id.* at *26 (citing *Finelite, Inc. v. Ledalite Arch. Prods*, No. 10-cv-1276-MMC, 2010 U.S. Dist. LEXIS 88041 (N.D. Cal. Aug. 26, 2010)) ("Although Levitt and Cats and Dogs never actually purchased advertising from Yelp, they do allege that Yelp's conduct led to a loss in patronage and revenues, thereby impacting the economic value of plaintiffs' businesses.").

Cases cited by Defendant do not hold to the contrary. For example, the *Clorox* case makes it clear that plaintiff, as a business impacted by DoorDash's improper and unfair business practices, have standing under the UCL's unfairness and unlawfulness prongs. *Clorox Co.*, 398 F. Supp. 3d at 646 ("[W]here the UCL claim argues unfair acts or practices, a plaintiff need not demonstrate that he or she was deceived by the alleged misrepresentation.").

## III.   Defendant Ignores Allegations That Clearly Establish Plaintiff's Entitlement to Relief

As with its challenges to the allegations underlying the Lanham Act claim, much of Defendant's Rule 9(b) grousing about the sufficiency of Plaintiff's allegations with respect to both the FAL and UCL claims appear to be rooted in Defendant not bothering to read the Amended Complaint at all. A review of the allegations that actually appear in the complaint—including

18

images of the offending content—make it very clear what Defendant has been alleged to have done wrong, and that there is quantifiable harm that flows from that improper behavior.

For example, Defendant asserts that Plaintiff has not pled an "untrue or misleading" statement to state a claim under the FAL. This is absurd:

- Plaintiff has alleged that Defendant was representing that it was closed, when in fact it was open. (¶¶ 3, 15–18, 33).

- Plaintiff has alleged that Defendant was representing that orders placed to Lona's were "out of range" or "too far" for locations that were literally across the street and far closer than other locations to which that DoorDash would deliver. (¶¶ 3, 15–16, 21–26, 33).

- Plaintiff has alleged that Defendant was representing that Lona's was not accepting take-out orders, when in fact it was. (¶¶ 3, 15–16, 27–31, 33).[9]

As detailed in the Amended Complaint, each of these statements was factually incorrect when made. (¶ 33.) The time, place, and manner of the statements is either explicitly stated in the Amended Complaint, or they are obvious from the context. (ECF No. 26, *passim*.) Indeed, Plaintiff included dated screenshots from Defendant's own websites and apps showing most of the specific representations and improper conduct at issue in this case. (*See, e.g.*, ¶¶ 18, 21–24, 28–30.) As noted above, what Rule 9(b) requires are sufficient allegations to advise a party of the nature and basis for the claims against it. The allegations of the operative complaint—and the dated screenshots highlighting the specific content at issue—are more than sufficient to put Defendant on notice as to what this case is about. *See United Healthcare Ins.*, 848 F.3d at 1180. Defendant may not plunge its head into the sand and cry ignorance of that which is plain.

Defendant's myopia is coupled with deflection, insisting that in addition to pleading what it said and did, Plaintiff must also plead enormous detail about the customers that advised Lona's of Defendant's improper conduct. Mot. at 25. This is not required by Rule 9(b) or any other Federal Rule at the pleading stage. Rule 9(b) requires specificity about *Defendant's* challenged conduct—the information Defendant is requesting about non-parties will certainly be the subject of discovery but need not be pleaded at this juncture to satisfy Rule 9(b). For pleadings purposes, however,

---

[9] *See also* Section II.B.1, *supra*.

Plaintiff has alleged sufficient information about these interactions to permit Defendant to understand what the substance of them was. (*E.g.*, ¶ 18.)

Finally, Defendant suggests that Plaintiff has not alleged injury stemming from its conduct. As with other claims in Defendant's motion, this is belied by the plain language of the pleadings. Plaintiff's damages theory—that Lona's would-be customers were instead steered to DoorDash partner restaurants, resulting in lost sales—is straightforward and obvious from a complete reading of the operative complaint; lest there be any confusion, however, Plaintiff has indeed explicitly alleged injury caused by Defendant's improper conduct. For example:

- Lona's lost business because of DoorDash's misrepresentation [that they were closed] . . . . (¶ 20.)

- Defendant's conduct has an obvious, significant, and unfair impact upon the competitive landscape within the restaurant industry and results in damage to Plaintiff and members of the Class. (¶ 34.)

- Consumers relied on the representations by Defendant from which Defendant omitted material information as described herein, which in turn resulted in damage to Plaintiff and the Class. (¶ 71.)

- Defendant's misrepresentations and omissions alleged herein caused Plaintiff and the other Class members to suffer damage to their business operations in that customers seeking their products were instead improperly steered to other Partner Restaurants . . . . (¶ 78.)

## IV.  Plaintiff's Individual Reliance is Not an Element of a UCL or FAL Claim of This Sort

Defendant attempts to graft an additional requirement upon Plaintiff's claims that the damages flow from Plaintiff's own reliance upon misrepresentations. While this is certainly true with respect to certain types of claims, it is not the case where, as here, the thrust of the case is that unfair and deceptive practices have had an impact upon the competitive landscape as a whole.[10] *Levitt*, 2011 U.S. Dist. LEXIS 99372, at *26.

---

[10] *See* ¶¶ 34–35, 73, 77c, 78 (alleging impact upon competition).

Moreover, courts have recognized that in the context of a commercial claim under the UCL and FAL, there is little reason to require individual reliance on the part of the plaintiff, particularly in light of the clear purpose behind Proposition 64's change to the standing requirements. *See generally Allergan United States v. Imprimis Pharm., Inc.*, No. 17-cv-1551-DOC (JDEx), 2017 U.S. Dist. LEXIS 223117 (C.D. Cal. Nov. 14, 2017); *see also SPS Techs., LLC v. Briles Aero., Inc.*, No. 18-cv-9536-MWF (ASx), 2019 U.S. Dist. LEXIS 219610, at *22–23 (C.D. Cal. Oct. 30, 2019) (permitting UCL and FAL claims to proceed); *VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*, No. 2:09-cv-02067-MCE-GGH, 2010 U.S. Dist. LEXIS 47453 (E.D. Cal. Apr. 20, 2010) (permitting FAL and UCL claims to proceed despite absence of direct reliance by plaintiff). Indeed, the California Supreme Court's holding with respect to the reliance requirement in *Kwikset* is expressly limited to consumer claims. *Kwikset*, 246 P.3d at 888 n.9 (2011) ("[W]e need express no views concerning the proper construction of the cause requirement in other types of cases.").

The Central District's discussion in *Allergan* of why it makes no sense to impose a plaintiff reliance requirement in the context of commercial competitor claims under the false advertising and unfair practice statutes is instructive:

> Proposition 64 was passed in order to prevent abusive UCL actions by attorneys whose clients had not been injured in fact or used the defendant's product or service . . . . As amended, the relevant portions of the UCL allow actions by a person who has suffered injury in fact and has lost money or property as a result. Unlike consumer plaintiffs prior to the passage of Proposition 64, competitor plaintiffs like Allergan do suffer an injury in fact . . . as a result of the competitor defendant's actions—loss of market share and sales due to the defendant's misleading advertising diverting customers. Therefore, Proposition 64's purpose of preventing actions by plaintiffs who have not suffered an actual injury does not apply to competitor plaintiffs.

> Applying *Kwikset's* reliance requirement to competitor claims, particularly those based on the "unlawful" prong of the UCL, makes little sense. False advertising claims between competitors are fundamentally different from false advertising claims by consumers. Even though the predicate unlawful act for both types of claims is based on misrepresentation, competitor plaintiffs are not concerned with the deceptive activity simply because it's deceptive. Competitor plaintiffs are concerned with the loss of sales and market share as a result of the deceptive activity. In contrast, consumer plaintiffs are concerned with the deceptive activity itself and suffer a wholly different type of harm from competitors—getting hoodwinked into purchasing a product or service. It is hard to imagine a scenario, though, in which a competitor plaintiff would rely on a

competitor defendant's misleading advertisements and suffer injury. . . . Thus, imposing the reliance requirement on competitor claims would impose a superficial hurdle on competitor plaintiffs seeking to stop or recover for damages caused by their competitor's false advertising. *Kwikset* does not appear to go so far.

*Allergan*, 2017 U.S. Dist. LEXIS 223117, at *39–41 (internal citations and punctuation omitted) (denying motion to dismiss UCL claims).[11]

Finally, the suggestion that Plaintiff's claims are all based upon misrepresentation (and thus require individual reliance) is simply incorrect. Plaintiff's claims under the UCL challenge Defendant's unfair and unlawful conduct and its impact upon the competitive landscape in the restaurant industry, which is independent of the claims of misrepresentation. In addition to allegations that premise the UCL claim upon that conduct, Plaintiff expressly alleges that Defendant's conduct, "[s]ignificantly threatens and harms competition in the restaurant industry," as a basis for establishing liability under the UCL. ¶ 77c; *see also* ¶¶ 3, 20, 34–35. The anticompetitive impact of injecting this sort of information into the marketplace is obvious. Thus, even if a UCL claim based upon fraud does require individual reliance on the part of the plaintiff, the UCL claim can still proceed under the unfair and unlawful prongs, where no such requirement exists. *See Clorox Co.*, 398 F. Supp. 3d at 646.

## V.      DoorDash's Websites Are Themselves Advertisements

As noted in Section I.B.2. *supra*, the content at issue constitutes "commercial advertisement or promotion" for Lanham Act purposes. This same analysis leads to the corresponding conclusion that these statements are made in the context of "publicly disseminated advertising" for purposes of the FAL. Indeed, DoorDash does not itself really sell anything, it is essentially in the business of marketing its partner restaurants. It facilitates deliveries between customers and restaurants, and one of the ways it does this is by using aggressive and robust search engine optimization to ensure that customers searching for food will always be presented with an option to use DoorDash. (¶ 14.) Particularly in the context of non-partner restaurants like Lona's, an unauthorized landing page is nothing more than an attempt to use existing demand for a business to draw customers to DoorDash

---

[11] It is true that some courts, including those cited by Defendant in *L.A. Taxi* and *Clorox*, have decided this issue differently, particularly with respect to the FAL claim. Plaintiff respectfully submits that the analysis and reasoning used by the Central District in *Allergan* appropriately recognizes the purpose behind Proposition 64's change in the standing requirements.

1   with the hopes that they will order from DoorDash instead. While the landing page's status as an

2   advertisement for DoorDash partner restaurants is not clearly evident to consumers—which is a

3   large part of the problem at the heart of the case—it is nevertheless a communication with the public

4   with the intent that they do business with DoorDash and is thus an advertisement for FAL purposes.

5   **VI.     Plaintiff is Entitled to Injunctive Relief**

6          Again, Defendant seeks dismissal on a basis that is flatly rebutted by the plain allegations

7   of the Amended Complaint. DoorDash asserts that "nowhere does the Amended Complaint allege

8   that the purported statements made by DoorDash remain on DoorDash's website or app." Mot. at

9   31. This is simply incorrect. While Plaintiff does allege past conduct that appears to have been

10  remedied (e.g., listing Lona's as closed when in fact it was open), Plaintiff also alleges that the

11  problem of showing it out of range persists on its mobile app platform as of November 11, 2020,

12  well after the original filing of the Complaint, and well after Defendant would presumably have

13  addressed the problem if it intended to do so. (¶¶ 27–34, n.3.) Even giving Defendant the benefit of

14  the doubt that it is indeed attempting to stop the challenged conduct, its inability to competently do

15  so makes the possibility of repeated violations far more than speculative. (¶ 20.)

16         Plaintiff need not be required to simply rely upon Defendant's altruism to protect its

17  interests; Plaintiff has alleged that "there is nothing to prevent [DoorDash] from reinstating such

18  misrepresentations as to Plaintiff or any other member of the class," (¶¶ 20, 36) such that injunctive

19  relief directed to insuring that it does not happen again is appropriate. *See Buckeye Tree Lodge v.*

20  *Expedia, Inc.*, No. 16-cv-04721-VC, 2019 U.S. Dist. LEXIS 40860, at *8–9 (N.D. Cal. Mar. 13,

21  2019) ("Indeed, given the absence of evidence that Expedia has instituted reforms to prevent itself

22  from listing hotels whose rooms are not available on its websites, there is reason to believe that the

23  named plaintiffs themselves could end up on those websites again.").

24         *Deitz v. Comcast*, upon which Defendant relies, does not hold to the contrary. In that case,

25  the plaintiff challenged Comcast's practice of charging for unnecessary cable box converter

26  equipment and sought forward-looking injunctive relief to prohibit the practice. While the court

27  found that the plaintiff could not seek this relief, it was on the basis that plaintiff no longer

28  subscribed to defendant's services (or any cable services) and there was no evidence that he

23

intended to do so. *Deitz v. Comcast Corp.*, No. 06-cv-06352-WHA, 2006 U.S. Dist. LEXIS 94333, at *9 (N.D. Cal. Dec. 21, 2006). Unlike the plaintiff in *Deitz*, who was in control of his own fate in terms of his ability to avoid future harm, Lona's is completely at the mercy of DoorDash's whim. Lona's has no business relationship with DoorDash and thus no leverage whatsoever, and without this Court's intervention, may well be subjected to this improper conduct in the future, as explicitly alleged in the operative complaint. (¶¶ 20, 36); *see Buckeye Tree Lodge*, 2019 U.S. Dist. LEXIS 40860, at *8–9.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion should be denied. To the extent the Court may find deficiencies in Plaintiff's complaint, Plaintiff respectfully requests leave to amend.

Respectfully submitted,

Dated: December 29, 2020      By:   */s/ Steven A. Schwartz*

Steven A. Schwartz (*pro hac vice*)
Zachary P. Beatty (*pro hac vice*)
CHIMICLES SCHWARTZ KRINER
 & DONALDSON-SMITH LLP
361 W. Lancaster Ave.
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
steveschwartz@chimicles.com
ZPB@chimicles.com

James J. Rosemergy (*pro hac vice*)
CAREY, DANIS & LOWE
8235 Forsyth, Suite 1100
St. Louis, MO 63105
Tele: 314-725-7700
Direct: 314-678-1064
Fax: 314-721-0905
jrosemergy@careydanis.com

Francis J. "Casey" Flynn, Jr.
CA State Bar No. 304712
LAW OFFICE OF FRANCIS J. FLYNN, JR.
422 South Curson Avenue
Los Angeles, California 90036
Tele: 314-662-2836
Email: casey@lawofficeflynn.com

**ATTORNEYS FOR PLAINTIFF AND
THE PROPOSED CLASS**

25

1

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 29, 2020, the foregoing document was filed electronically on the CM/ECF system, which caused all CM/ECF participants to be served by electronic means.

By: _/s/ Steven A. Schwartz_

Attorney for Plaintiff