1
2
3
4                    UNITED STATES DISTRICT COURT
5                   NORTHERN DISTRICT OF CALIFORNIA
6

7    LONA'S LIL EATS, LLC,                    Case No.  20-cv-06703-TSH
8                         Plaintiff,
9             v.                              **ORDER RE: MOTION TO DISMISS**
10   DOORDASH, INC.,                          Re: Dkt. No. 29
11                         Defendant.
12
13                             **I.    INTRODUCTION**
14           In this putative class action, Plaintiff brings claims for purported violations of the Lanham
15   Act, California's false advertising statute, and California's unfair competition statute, alleging that
16   Defendant misrepresents to consumers that it provides delivery and pick-up services for non-
17   partner restaurants and then misrepresents the restaurants are closed, do not offer delivery
18   services, or are unavailable for pick-up orders.  Pending before the Court is Defendant's Motion to
19   Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 29.  Plaintiff filed an
20   Opposition, ECF No. 30, and Defendant filed a Reply, ECF No. 31.  The Court finds this matter
21   suitable for disposition without oral argument and **VACATES** the January 21, 2021 hearing.  *See*
22   Civ. L.R. 7-1(b).  Having considered the parties' positions, relevant legal authority, and the record
23   in this case, the Court **DENIES** Defendant's motion for the following reasons.
24                             **II.    BACKGROUND**
25           Plaintiff Lona's Lil Eats, LLC ("Lona's"), alleges the following:
26           Defendant DoorDash, Inc. is in the business of delivering food for restaurants via its
27   websites and mobile apps.  Compl. ¶ 2, ECF No. 26.  DoorDash has partnerships with certain
28   restaurants around the country.  *Id.* ¶ 9.  Through these partnerships, DoorDash takes online orders

United States District Court
Northern District of California

United States District Court
Northern District of California

1  from customers using its websites or mobile app, which orders are then relayed to the partner

2  restaurants.  *Id.*  A customer who places an order using DoorDash's platforms can select to have

3  the food delivered by DoorDash or can choose to pick it up themselves.  *Id.*  If a customer wants

4  delivery, DoorDash will engage someone from its network of drivers to go to the restaurant, pick

5  up the order, and deliver it to the customer.  *Id.* ¶ 2.  DoorDash then collects payments from the

6  customer for these orders and also withholds various commissions and fees from partner

7  restaurants in exchange for its services.  *Id.* ¶ 10.

8  To the extent that it offers a mechanism to order food online and then have it delivered or

9  made available for pickup, DoorDash competes directly with restaurants that offer their own

10  online delivery or pick-up services.  *Id.* ¶ 12.  DoorDash, which was recently valued at $16 billion,

11  has developed significant market power, particularly as a result of the COVID-19 pandemic.  *Id.* ¶

12  11.  With many restaurants unable or unwilling to offer dine-in services, many consumers have

13  turned to DoorDash to order pickup or delivery in lieu of dining out.  *Id.*  DoorDash's market

14  power is such that restaurants are put in a difficult situation: they can become partner restaurants

15  and pay exorbitant fees and commissions to Defendant, or they decline to do so and risk losing out

16  on sales.  *Id.* ¶ 13.

17  Worse yet, DoorDash pressures non-partner restaurants by setting up "landing pages" for

18  them, which in some instances still are available on its website and on its mobile app.  *Id.* ¶ 14.

19  The landing pages are displayed for the general public to see, and DoorDash's marketing power is

20  such that the landing pages are often prioritized on internet search engines and displayed even

21  before the restaurants' own websites.  *Id.*  These landing pages are complete with DoorDash

22  branding and usually show a restaurant's full menu, even if the restaurant has no affiliation with

23  DoorDash and has not authorized the use of its information.  *Id.*  This façade of a connection

24  signals to consumers that the landing page for the non-partner restaurant is legitimate and can be

25  relied upon.  *Id.*

26  On these landing pages, DoorDash publishes false and misleading information about

27  restaurants that are not its partners, including restaurants being "closed" when they were in fact

28  open; being "unavailable" as "too far away" for delivery; and being "unavailable" for pick-up

2

1   orders when the restaurant is in fact accepting pick-up orders. *Id.* ¶ 15. Each of these false and

2   misleading statements steers would-be customers of non-partner restaurants' to DoorDash's

3   partner restaurants. *Id.*

4       Lona's is one such non-partner restaurant. In June 2020, as the pandemic's effects were

5   crippling small-business restauranteurs, several customers informed Lona's that it was being

6   represented as closed online on DoorDash's landing page for Lona's. *Id.* ¶ 17. If a consumer

7   were to search for "Lona's Lil Eats delivery," as a result of DoorDash's market power and internet

8   marketing strategies, then one of the first results displayed was a link for Lona's on a DoorDash

9   website. *Id.* ¶ 21. Lona's had no relationship with DoorDash, so its website mock-up of a Lona's'

10  landing page is itself deceptive, let alone falsely representing that Lona's was closed. *Id.* ¶ 17.

11  Clicking through the link for Lona's would bring a consumer to a page with DoorDash branding

12  and Lona's' complete menu, as if it were possible to place an order through the site:



23  *Id.* ¶ 21 (the website images are from DoorDash's website on August 18, 2020, unless otherwise

24  noted). DoorDash's site would let the customer go through the process of placing an order,

25  including the opportunity to customize the order, adding credibility to the idea that Lona's had

26  partnered with DoorDash and that placing an order was possible:

27

28

United States District Court
Northern District of California



*Id.* ¶ 22.  The order, however, could not be completed, and no matter what the user's proximity to Lona's—even as close as only 200 feet away—the site would say that ordering from Lona's was "unavailable" on account of being "out of the delivery area" and "too far."



*Id.* ¶¶ 23-24.  The problem is not, in fact, that a delivery address is too far away, but that Lona's has not agreed to partner with DoorDash and pay its fees.  *Id.* ¶ 25.  A consumer can change his or her address over and over again, but Lona's will never become available for delivery because it is not a partner restaurant.  *Id.*

The same is true for DoorDash's mobile app.  *Id.* ¶ 26.  DoorDash's mobile app misrepresents that Lona's is not available for delivery and also not accepting pick-up orders:

4

1



2

3

4

5

6

7

8

9

10

11

12    *Id.* ¶¶ 27-28 (the mobile phones images are from November 11, 2020).  And if the consumer clicks

13    on the information button immediately next to "Unavailable too far away," then the app displays

14    options of "Switch to Pickup" or "See other stores":

15



16

17

18

19

20

21

22

23

24

25

26    *Id.* ¶ 29.  Since Lona's (at 200 feet) is too far away for delivery, DoorDash represents that the

27    customer could simply "Switch to Pickup."  *Id.* ¶ 30.  Indeed, pick-up is available at Lona's, but

28    not through DoorDash.  *Id.*  So, when the customer chooses "Switch to Pickup," DoorDash

misrepresents that pick-up is not an option:



*Id.* ¶ 30. Since DoorDash misrepresents that even pick-up at Lona's is "unavailable," the customer returns to the information screen and clicks the next option, "See other stores," which routes what would be Lona' customer back to DoorDash's home page, where DoorDash markets its partner restaurants. *Id.* ¶ 31. Thus, DoorDash takes advantage of the existing market demand for Lona's and other restaurants to drive traffic to its site, where it redirects customers to partner restaurants by suggesting that Lona's is not an option. *Id.* ¶ 32. In fact, Lona's provides curb-side, pick-up service, so therefore DoorDash's representations that Lona's is too far away for delivery, not taking pick-up orders, or closed are not true. *Id.* ¶ 33.

Accordingly, DoorDash is publishing false and deceptive information about the ability to get food from Lona's as a means of punishing Lona's for not partnering with it, and/or pressuring Lona's to partner with it, and to redirect would-be Lona's business to its partner restaurants. *Id.* ¶ 34. And several customers were, in fact, misled by DoorDash's misrepresentation that Lona's was closed and did not know whether Lona's was actually open. *Id.* ¶ 18. Some of these customers reached out to Lona's to ask if they were actually open. *Id.* After a number of such communications, on June 5, 2020, Lona's posted on its Facebook page that, contrary to DoorDash's fake webpage, Lona's was indeed open:

1
2
3
4
5
6



7    *Id.*  At some point thereafter, the false "closed" designation was removed.  *Id.* ¶ 19.  Lona's lost

8    business because of DoorDash's misrepresentation, and there is nothing going forward preventing

9    DoorDash from again misrepresenting that Lona's and similarly situated restaurants are closed.

10   *Id.* ¶ 20.

11          In essence, DoorDash's creating a misleading landing page for Lona's is unfairly

12   pressuring Lona's to "partner up, or else."  *Id.* ¶ 34.  Defendant's conduct has an obvious,

13   significant, and unfair impact upon the competitive landscape within the restaurant industry and

14   results in damage to Plaintiff and members of the Class.  *Id.*  This behavior is particularly

15   troubling in the context of the COVID-19 pandemic: at a time when many restaurants—and in

16   particular locally-owned restaurants—are struggling to stay open and have been forced to radically

17   change their business model to survive, DoorDash is engaged in predatory, deceptive, and

18   anticompetitive behavior that takes unfair advantage of their market position.  *Id.* ¶ 35.  To the

19   extent that DoorDash has allegedly removed its false advertisements and misrepresentations as

20   alleged herein, there is nothing to prevent it from reinstating such misrepresentations as to Lona's

21   or any member of the putative class.  *Id.* ¶ 36.

22          Lola's three-count Amended Complaint ("FAC") asserts a claim of false advertising under

23   the Lanham Act § 43(a), 15 U.S.C. § 1125(a); a violation of California False Advertising Law

24   ("FAL"), California Business and Professions Code §§ 17500, *et seq.*; and a violation of

25   California Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200,

26   *et seq.*

27

28

### III.  LEGAL STANDARDS

Defendants move for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  A motion to dismiss under Rule 12(b)(1) tests the subject matter jurisdiction of the court.  Dismissal is appropriate under Rule 12(b)(1) if a plaintiff's allegations fail to establish that the Court has subject matter jurisdiction over the action.  *Fareed Sephery-Fard v. Santa Clara Court*, 2018 WL 6025606, at *1 (N.D. Cal. Nov. 16, 2018).  "On a motion to dismiss pursuant to Rule 12(b)(1) . . . the burden is on the plaintiff, as the party asserting jurisdiction, to establish that subject matter jurisdiction exists."  *Id.*  A plaintiff seeking injunctive relief must have Article III standing to seek that relief, which requires a plausible allegation of potential future harm to the plaintiff.  *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).

Also, under the federal rules a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To survive a Rule 12(b)(6) motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), a complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 687.  In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678.

Moreover, "[a] plaintiff alleging fraud must overcome a heightened pleading standard under Rule 9(b)," *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1031 (9th Cir. 2016), which provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b).  The rule "serves not only to give notice to defendants of the specific fraudulent conduct against which they must defend, but

1   also to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect

2   defendants from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs

3   from unilaterally imposing upon the court, the parties and society enormous social and economic

4   costs absent some factual basis." *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001)

5   (citations and internal quotations omitted).  Accordingly, in order to survive a motion to dismiss

6   for failure to plead fraud with the particularity required by Rule 9(b), "'[a]verments of fraud must

7   be accompanied by "the who, what, when, where, and how" of the misconduct charged.'"  *Kearns*

8   *v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*,

9   317 F.3d 1097, 1106 (9th Cir. 2003)).

10                              **IV.   DISCUSSION**

11   **A.     Lona's Latham Act Claim**

12          To succeed on a false advertisement claim under Lanham Act § 43(a), a plaintiff must

13   show each of the following:

> (1) a false statement of fact by the defendant in a commercial
> advertisement about its own or another's product; (2) the statement
> actually deceived or has the tendency to deceive a substantial segment
> of its audience; (3) the deception is material, in that it is likely to
> influence the purchasing decision; (4) the defendant caused its false
> statement to enter interstate commerce; and (5) the plaintiff has been
> or is likely to be injured as a result of the false statement, either by
> direct diversion of sales from itself to defendant or by lessening of the
> goodwill associated with its products.

19   *Wells Fargo & Co. v. ABD Ins. & Fin. Servs.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citation

20   omitted).  Lanham Act claims based on alleged false advertising must meet the heightened

21   pleading requirements of Rule 9(b).  *Factory Direct Wholesale, LLC v. iTouchless Housewares &*

22   *Products, Inc.*, 411 F. Supp. 3d 905, 923 (N.D. Cal. 2019) (citations omitted).

23          DoorDash argues that Lona's has failed to meet its pleading burden with respect to its

24   Lanham Act claim for four separate reasons, each of which DoorDash argues provides an

25   independent basis for dismissal: first, Lona's has not pled the existence of a "false statement" with

26   particularity; second Lona's has not pled that DoorDash made its purported statement in a

27   "commercial advertisement"; third, Lona's has not adequately pled that DoorDash's statements

28   actually deceived or had a tendency to deceive any segment of DoorDash's audience; and fourth,

United States District Court
Northern District of California

1    Lona's has not adequately pled that it was injured.

2        **1.     False Statements**

3        DoorDash argues first that Lona's has not alleged a false statement with the particularity

4    required by Rule 9(b).  "To properly plead fraud with particularity under Rule 9(b), a pleading

5    must identify the who, what, when, where, and how of the misconduct charged, as well as what is

6    false or misleading about the purportedly fraudulent statement, and why it is false."  *Davidson*,

7    889 F.3d at 964 (citation and internal quotations omitted).  Lona's contends that it alleged two

8    literally false statements and one statement that was true but likely to mislead consumers.  The two

9    false statements are contained in Lona's' allegation that in June 2020, DoorDash falsely

10   represented that Lona's was "closed" when it was in fact open, FAC ¶¶ 17-20, and its allegation

11   that DoorDash falsely represented and is still representing that Lona's is "unavailable" for pick-up

12   orders, *id.* ¶¶ 27-31.  As to the misleading statement, Lona's points to its allegation that DoorDash

13   misrepresented that it was "unavailable" for delivery services because it was "too far away."  *Id.*

14   ¶¶ 21-26.  DoorDash contends that Lona's did not allege the who, what, when, or where for any of

15   these statements, Reply at 5, but Lona's clearly has.

16        For each of the statements, Lona's plainly alleges that DoorDash made the statements (the

17   "who").  DoorDash complains that Lona's "does not allege who at DoorDash made the purported

18   designation," MTD at 15, but it is sufficient at the pleading stage to allege that DoorDash made

19   the statement.  DoorDash points to no legal authority suggesting that an individual employee must

20   be named in the complaint, and it's hard to see how Lona's could get that information at this point

21   or who even at DoorDash would be considered the maker of the statement in lieu of the company

22   itself.  Additionally, Lona's identifies who was misled by the allegedly deceptive statements—

23   would-be customers.  *E.g.*, FAC ¶ 18 ("Several customers were, in fact, misled by DoorDash's

24   misrepresentation that Lona's was closed, and they did not know whether Lona's was actually

25   open.  Some of these customers reached out to Lona's to ask if they were actually open.").

26   DoorDash complains that Lona's has not identified any specific customers who called Lona's, but

27   it doesn't cite to any authority suggesting that Lona's must do so at the pleading stage.  In this

28   case, where the plaintiff has alleged that a statement was made to the purchasing public and that at

United States District Court
Northern District of California

least some of the public communicated that they were misled by those statements, that is enough specificity at the pleading stage.  *See, e.g.*, *23andMe, Inc. v. Ancestry.com DNA, LLC*, 356 F. Supp. 3d 889, 910 (N.D. Cal. 2018) (misrepresentations made on a website were actionable where plaintiff had alleged that the misrepresentations were "misleading consumers"); *Axis Imex, Inc. v. Sunset Bay Rattan, Inc.*, 2009 WL 55178, at *4 (N.D. Cal. Jan. 7, 2009) (rejecting that a "false advertising claim should be dismissed because it fails to aver evidence of actual or likely deception to purchasers"); *id.* ("While the facts may show nothing more than one mislabeled shipment, at this stage, the averment that the mislabeled boxes were commercially available for sale to customers who could be deceived as to their origin is sufficient to plead deception for purposes of maintaining the claim.").

The "where" and "how" are also clearly alleged.  At paragraph 17, Lona's alleges that "several customers informed Lona's that it was being represented as closed online on DoorDash's landing page for Lona's."  FAC ¶ 17.  Again, at paragraphs 18 and 19, it alleges that "contrary to DoorDash's fake webpage, Lona's was indeed open," and that "[a]t some point" after it informed customers that "Lona's was indeed open," "the false 'closed' designation was removed."  *Id.* ¶¶ 18-19.  For the "unavailable" and "too far away" representations, Lona's alleges that "on a DoorDash website (i.e. the [fake] Lona's landing page)," "DoorDash's site would let the customer go through the process of placing an order," only for the customer to be told that, "[t]he order, however, could not be completed, because . . . the site would say that it was 'unavailable' on account of being 'out of the delivery area' and 'too far.'"  *Id.* ¶¶ 21-23.  These allegations were complete with screenshots showing the progression of screens which led a user to the alleged statements on the website.  Short of alleging the actual URL for the DoorDash website (which can, as a matter of fact, be read in at least one screenshot), it's hard to see how Lona's could be more specific about where or how the statements were alleged.  And for the mobile app statements, Lona's alleges that "DoorDash's mobile app misrepresents that Lona's is not available for delivery and, also, not accepting orders," and also provides a screenshot from the mobile app showing the restaurant listed as "Unavailable" "too far away" for delivery, and another showing it as "unavailable" for pick-up from a location 200 feet away.  *Id.* ¶¶ 27-31.

As to the question of "when" the statements were made, DoorDash asserts that "neither the actual date the screenshot was taken nor any date range as to when the 'unavailable' designation appeared" is alleged.  MTD at 15.  But that's just not accurate.  Lona's clearly alleges the date the screenshots were taken.  FAC ¶¶ 21, 28.  The dates the screenshots were taken obviously indicate that the statements were made on those dates.  DoorDash makes the point that "documents included in a complaint may be considered in ruling on a Rule 12(b)(6) motion only if no party contests their authenticity."  Reply at 6 (citing *Postier v. Lousiana-Pacific Corp.*, 2009 WL 3320470, at *7 (N.D. Cal. Oct. 13, 2009) ("[U]nder the 'incorporation by reference' rule, 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.'") (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)).  But DoorDash doesn't actually contest the authenticity of the screenshots, so that point is moot.[1]  And even if the Court ignores the content of the screenshot images, the dates on which they were taken (and hence, the dates the statements were made) are alleged separately.

In sum, Lona's alleges clearly who made the statements (DoorDash) to whom (potential Lona's customers), what the statements represented (Lona's was "closed," "unavailable," or "too far away"), where and how they were made (on DoorDash's website and mobile app by leading customers to believe DoorDash "had a business relationship" with Lona's), and when (June 2020, August 18, 2020, and November 11, 2020).  The specificity requirements of Rule 9(b) are met as to the allegedly misleading statements.

## 2. Commercial Advertisement

The Ninth Circuit explained in *Coastal Abstract Serv. v. First Am. Title Ins. Co.*, 173 F.3d 725 (1999) that,

> [i]n order for representations to constitute "commercial advertising or promotion" under Section 43(a)(1)(B), they must be: [] commercial speech; [] by a defendant who is in commercial competition with plaintiff; [] for the purpose of influencing consumers to buy

---

[1] DoorDash objects that screenshots "contain[] no DoorDash branding," MTD at 6, but it does not dispute that the app shown in the screenshot is its own and presumably it would know if that were the case, and also it did not move to strike the screenshots from the Complaint.

> defendant's goods or services.  While the representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representations [] must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Id.* at 735 (citations omitted).  However, in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), the Supreme Court expressly rejected "a categorical test permitting only direct competitors to sue for false advertising," holding instead that an "application of the zone-of-interests test and the proximate-cause requirement supplies the relevant limits on who may sue" under § 1125(a).  *Id.* at 134.  While the Ninth Circuit has not overruled *Coastal Abstract* in light of *Lexmark*, the second element of the *Coastal Abstract* test is no longer good law.  *Lexmark*, 572 U.S. at 136 ("[A] rule categorically prohibiting all suits by noncompetitors would read too much into the Act's reference to 'unfair competition' in [15 U.S.C.] §1127."); *see also Ariix, LLC v. Nutrisearch Corp.*, 2018 WL 1456928, at *4 (S.D. Cal. Mar. 23, 2018) ("After *Lexmark*, the second element is likely in need of revision.  But the first and fourth elements were not implicated by *Lexmark's* holding, and remain good law."); *Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, 700 Fed. Appx. 251, 257 (4th Cir. 2017) ("Taking into account *Lexmark*, the lack of a competition requirement in the statute's false advertising prohibition, the fact that our sister circuits adopting the competition factor did so before *Lexmark*, and that the only circuit to examine the *Gordon & Breach* factors post-*Lexmark* has rejected the competition factor, we also do not require a competitive relationship when determining whether a communication is advertising or promotion.") (referencing *Gordon & Breach Sci. Publrs. S.A. v. Am. Inst. of Physics*, 905 F. Supp. 169 (S.D.N.Y. 1995)).  Accordingly, for representations to constitute "commercial advertising or promotion" post-*Lexmark*, they must be: (1) commercial speech; (2) for the purpose of influencing consumers to buy defendant's goods or services; and (3) disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.  To be able to sue under § 1125(a), a plaintiff's injuries must be to the type of commercial interests which the Act protects, and the injuries must have been proximately caused by the defendant's representations.  *Lexmark*, 572 U.S. at 137.

As to the first element of the test, DoorDash argues that "a page on DoorDash's website or

app where a customer completes an order is not 'commerical speech' for purposes of a false advertising claim under the Lanham Act." MTD at 17. But DoorDash doesn't genuinely argue that the statements were not commercial speech. In its memorandum of law, it proceeds to argue the third element of the test, whether the statements were disseminated sufficiently to the purchasing public to constitute "advertising" or "promotion." *See* MTD at 17. And in its reply, it devotes only a sentence to discussing whether the statements were commercial speech, making the point that the "alleged statements at issue were *not* in an advertising format . . . ." Reply at 6. But as DoorDash itself notes, the Supreme Court has relied on more than just that one factor to determine whether statements amounted to commercial speech. "The Supreme Court [has] relied on three factors to determine whether statements amounted to commercial speech: whether they were in an advertising format, whether they referred to a specific product, and economic motivation for publication." *Ariix*, 2018 WL 1456928, at *4 (citing *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-68 (1983)). Because DoorDash ignores those other factors and makes only a cursory argument as to whether the statements were commercial speech, the Court considers the argument waived. (Though, however, Lona's argues an economic motive for the statements which is supported by allegations in the complaint: "increasing its commissions and strong-arming Plaintiff to partner with it." Opp'n at 14; *see* FAC ¶ 13)

Turning to the second element, the Amended Complaint can read as alleging that DoorDash's statements were "for the purpose of influencing consumers" to use DoorDash's services. Specifically, Lona's alleges that DoorDash misrepresented the availability of services and products and that the landing pages and misleading or false statements "steered non-Partner restaurants' would-be customers to DoorDash's Partner Restaurants," restaurants who "pay exorbitant fees and commissions" to DoorDash. FAC ¶¶ 13, 15. DoorDash argues that nowhere does the Complaint allege that "closed" or "unavailable" designations were made to convince customers to purchase DoorDash's products because DoorDash does not sell food. That is irrelevant. *Lexmark* made clear that a defendant need not be a direct competitor. 572 U.S. at 136 ("It is [] a mistake to infer that because the Lanham Act treats false advertising as a form of unfair competition, it can protect *only* the false-advertiser's direct competitors."). DoorDash's product is

a service, and DoorDash makes money in fees and commissions whenever a consumer orders food from a partner restaurant, and by allegedly misleading consumers and re-directing them away from non-partner restaurants to partner restaurants, DoorDash allegedly gains at non-partner restaurants' expense.  In other words, Lona's has alleged injury to its commercial interests that is proximately causes by DoorDash's misrepresentations.  That is all that is required at the pleading stage.  DoorDash's reference to *Alfasigma USA, Inc. v. First Databank, Inc.*, 398 F. Supp. 3d 578 (N.D. Cal. 2019), doesn't help its argument.  There, the court dismissed Lanham Act claims because the plaintiff had "not plausibly alleged, as required under *Coastal Abstract*, that [the defendant's] representations were made for the purpose of influencing customers to purchase [the defendant's] services."  *Id.* at 591; *id.* ("[N]owhere in the false advertising causes of action does [plaintiff] assert that [defendant] made the allegedly false and misleading statements for the purpose of influencing consumers to subscribe to its [] database.").  But here, Lona's has alleged just that—that DoorDash mislead customers away from Lona's' product in order to get the customers to use DoorDash's services.  *Tagtrends, Inc. v. Nordstrom, Inc.*, 2013 WL 12126741 (C.D. Cal. Aug. 15, 2013) is inapposite for the same reason.  *See id.* at *5 ("The distinction here is that Defendant . . . . did not use the [misleading] mark to influence consumers to buy <u>Defendant's</u> own goods or services.").  *Tagtrends* also predated *Lexmark*, and the court based its holding in part on the fact that the defendant was not alleged to be the plaintiff's competitor; *Lexmark* held this is not required for a false advertising claim under the Lanham Act.

Finally, as to the last element, DoorDash argues that Lona's has not alleged that the false or misleading statements were disseminated sufficiently to constitute "advertising" or "promotion" because Lona's "does not identify, or even estimate, how many potential customers saw" the statements.  MTD at 17.  "[A]t best," DoorDash argues, "only those customers who attempted to place an order for food from [Lona's] would have come across such statements."  *Id.*  That is sufficient for the last element, which asks whether representations were "disseminated sufficiently to the relevant purchasing public."  "[T]he primary focus is the degree to which the representations in question explicitly target relevant customers."  *Gordon & Breach*, 905 F. Supp. at 182.  Lona's alleges that *any time* a customer ran an internet search for Lona's, they would, "as a result of

15

DoorDash's market power and internet marketing strategies," FAC ¶ 21, be taken to a DoorDash landing page set up for Lona's which, after navigating through a "complete menu, as if it were possible to place an order through the site," would tell the user that the restaurant was "closed," "unavailable," and/or "too far away." *E.g.*, FAC ¶¶ 14-15, 17, 21, 28. In other words, Lona's alleges that DoorDash targeted all relevant customers, and that as a result of its market power and marketing strategies, was "one of the first results" that such customers would encounter. *Id.* ¶ 21.

Finally, DoorDash complains that "the alleged misrepresentations appeared only after a potential customer had clicked through multiple screens to land on a final checkout page." But it doesn't say what to make of that fact. The reasonable takeaway is that by luring would-be Lona's customers onto its landing pages, taking them through a Lona's menu, and then "redirect[ing] [them] to [] Partner Restaurants by suggesting that Lona's is not an option," FAC ¶ 32, DoorDash was promoting its own services. Why else go through the trouble?

Lona's has adequately alleged that DoorDash's representations were made as part of commercial advertising or promotion.

### 3. Actual Deceit or Tendency to Deceive and Falsity

DoorDash argues that Lona's fails to offer any facts supporting its claim that DoorDash's statements deceived consumers or had the tendency to deceive. Lona's, DoorDash argues, "does not identify any consumers who were actually misled or even potentially misled by the 'unavailable' designation, and [] does not allege that any consumers associated DoorDash's purported statements with their ability to purchase from [Lona's]." MTD at 20. But Lona's does allege that, "[s]everal customers were, in fact, misled by DoorDash's misrepresentation that Lona's was closed, and they did not know whether Lona's was actually open." FAC ¶ 18. "Some of these customers," Lona's alleges, "reached out to Lona's to ask if they were actually open." *Id.* Reading the Complaint in the light most favorable to Lona's, as the Court must do, that allegation sufficiently alleges that consumers were misled or nearly by DoorDash's statements. That allegation, paired with the allegations that, "no matter [] the user's proximity to Lona's," "DoorDash's site" would tell customers that Lona's was "unavailable" and "too far away," sufficiently pleads that DoorDash's statements had a tendency to deceive would-be Lona's

customers.[2]  At the pleading stage, a plaintiff need not provide evidentiary proof of actual or likely deception.  *See, e.g.*, *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 636 (N.D. Cal. 2019) ("Actual deception is a question of fact, and at the pleading stage the plaintiff need only allege specific misleading statements and explain why they are misleading in accordance with Rule 9(b)."); *R & A Synergy LLC v. Spanx, Inc.*, 2019 U.S. Dist. LEXIS 168266, at *38 (C.D. Cal. May 1, 2019) ("[T]he Court recognizes that consumer deception is typically proved through consumer surveys, which may be appropriately conducted during the discovery phase."); *JHP Pharms., LLC v. Hospira, Inc.*, 52 F. Supp. 3d 992, 1003 (C.D. Cal. 2014) ("While [plaintiff] has not yet produced actual evidence of these consumer beliefs, at the motion to dismiss stage, the Court can accept allegations of such facts as sufficient."); *see also Factory Direct Wholesale, LLC v. Itouchless Housewares & Prods.*, 411 F. Supp. 3d 905, 924 (N.D. Cal. 2019) ("[W]here a statement is literally false or the defendant intentionally set out to deceive, actual deception is presumed.") (citations and internal quotation marks omitted).

Lona's has sufficiently pled deception to maintain its Lanham Act claim.

### 4.    Injury

Finally, DoorDash argues that Lona's' Lanham Act fails because Lona's has not adequately pled injury.  A plaintiff must adequately allege that it "has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by lessening of the goodwill associated with its products."  *Wells Fargo & Co.*, 758 F.3d at 1071.  Lona's alleges that "DoorDash has engaged and continues to engage in a pattern of unfair behavior whereby it . . . deceptively steers customers away from restaurants and pushes those would-be customers to its partner restaurants instead."  FAC ¶ 3.  It alleges that "Lona's lost business because of DoorDash's misprepresentation," *id.* ¶ 20, and that DoorDash's "conduct has an obvious, significant, and unfair impact upon the competitive landscape within the restaurant

---

[2] In its Reply, DoorDash argues that Lona's does not address the "actual deceit or tendency to deceive" element of its Lanham Act claim in its response.  That's not accurate either.  *E.g.*, Opp'n at 9 ("And Plaintiff clearly alleged that some consumers in fact saw the landing pages, ¶ 18, who were almost deceived—and the ones who were deceived would not be known, at this stage, because the deception worked."); *id.* at 9-10 (discussing the burden at the pleading stage for alleging actual deception or tendency to deceive).

1    industry and results in damage to Plaintiff and members of the Class," *id.* ¶ 34.  It alleges that:

2         *Defendant's conduct results in both short-term and longer-term*
          *damage to Plaintiff* and members of the Class in that consumers are
3         led to believe that they are not operating at all, or that they do not
          provide delivery service, or that pick-up is not an option such that not
4         only do they miss out on orders in the short term, but they are less
          likely to attempt to order from them in the future, since they are
5         represented to be closed or not available.

6    *Id.* ¶ 60 (emphasis added).  It alleges that, "[a]s a direct and proximate result of Defendant's

7    violation and false and misleading statements and omissions described herein, pursuant to 15

8    U.S.C. § 1117, Plaintiff and the Class have sustained monetary damages," *id.* ¶ 63, and that

9    "Plaintiff and the class have additionally sustained other irreparable injury, including loss of

10   market position, loss of reputation, loss of goodwill, the ability to continue as a going concern, and

11   other damage for which there is no adequate remedy at law," *id.* ¶ 64.  These allegations,

12   individually and certainly taken together, sufficiently allege injury.  DoorDash again brings up the

13   point that it is not in direct competition with Lona's.  *E.g.*, MTD at 21 ("Plaintiff's allegation that

14   it was injured by DoorDash, which is not in direct competition with Plaintiff, is insufficient to

15   support a Lanham Act claim."); Reply at 8 ("An allegation of injury by a non-competitor is

16   insufficient in the Ninth Circuit.").  It cites to *Jack Russell Terrier Network v. Am. Kennel Club,*

17   *Inc.*, 407 F.3d 1027 (9th Cir. 2005), where the Ninth Circuit affirmed dismissal of a Lanham Act

18   claim where the plaintiff was not a competitor of the defendant and therefore could not show that

19   it had "suffered a competitive injury."  *Id.* at 1037.  But that decision predated *Lexmark*, and

20   *Lexmark* "expressly rejected any requirement that a plaintiff show direct competition to prevail on

21   a false advertising claim."  *Geiger v. Creative Impact Inc.*, 2020 WL 4583625, at *2 (D. Ariz.

22   Aug. 10, 2020).  Thus, DoorDash's direct-competitor argument is unavailing.  Also, DoorDash

23   insists that "alleged injuries 'still require sufficiently detailed allegations,'" MTD at 21 (quoting

24   *DNA Sports Performance Lab, Inc. v. Major League Baseball*, 2020 WL 4430793, at *4 (N.D.

25   Cal. Aug. 1, 2020)), but it doesn't suggest what more Lona's needs to allege short of the name of a

26   "customer who opted to place an order with a competitor restaurant because they saw on

27   DoorDash's platform that Plaintiff was allegedly 'unavailable' or 'closed.'"  MTD at 21.  It may

28   be that down the line Lona's struggles to meet its evidentiary burden of showing customers who

United States District Court
Northern District of California

18

1   placed an order with a competitor restaurant after being misled by DoorDash's statements, but for
2   purposes of the pleadings it's sufficient that Lona's has alleged that, "[s]everal customers were, in
3   fact, misled by DoorDash's misrepresentation that Lona's was closed, and they did not know
4   whether Lona's was actually open," and that "[s]ome of these customers reached out to Lona's to
5   ask if they were actually open." FAC ¶ 18. Lona's has sufficiently alleged a claim under the
6   Lanham Act.

7   **B.      Lona's FAL and UCL Claims**

8          In addition to its Lanham Act false advertising claim, Lona's alleges that DoorDash has
9   violated California Unfair Competition Law and California's False Advertising Law. The UCL
10  prohibits "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue
11  or misleading advertising." Cal. Bus. & Prof. Code § 17200. "The FAL prohibits 'untrue or
12  misleading' statements in the course of business." *Pulaski & Middleman, LLC v. Google, Inc.*,
13  802 F.3d 979, 985 (9th Cir. 2015) (quoting Cal Bus. & Prof. Code § 17500). The language of
14  these two statutes is "'broad' and 'sweeping' to 'protect both consumers and competitors by
15  promoting fair competition in commercial markets for goods and services.'" *Pulaski*, 802 F.3d at
16  985 (quoting *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 320 (2011)).

17         DoorDash argues that both these claims fail for the same three independent reasons: (1)
18  Lona's Lanham Act claim fails; (2) Lona's lacks standing; and (3) Lona's has not pled with
19  specificity as required by Rule 9(b). MTD at 22, 27. Since Lona's Lanham Act claim is viable,
20  DoorDash's first ground is quickly disposed of. The Court will address each of the other two
21  grounds in turn.

22         **1.      Lona's Standing Under the UCL and FAL**

23         The parties argue about whether a plaintiff must allege that it suffered an injury due to
24  actual reliance upon a representation or omission by a defendant in order to have standing for UCL
25  and FAL claims based in fraud. DoorDash argues that "[t]o have standing under the FAL,
26  [Lona's] must allege that it suffered an injury due to *its own* actual and reasonable reliance on the
27  purported misleading statements." MTD at 23.

28         "Whether competitors must demonstrate their own reliance on a defendant's allegedly

19

misleading statement remains an open question."  *Millennium Dental Techs. Inc. v. Terry*, 2018

WL 5094965, at *15 (C.D. Cal. July 16, 2018) (citing *L.A. Taxi Coop. v. Uber Techs., Inc.*, 114

F.Supp.3d 852, 866 (N.D. Cal. 2015) ("Federal Courts sitting in California have disagreed [] about

whether competitor plaintiffs must plead their own reliance, or whether pleading customer reliance

is sufficient for fraudulent business practices claims brought by competitors.")).  There is a split

between district courts in this Circuit as to that question, with a majority of courts apparently

requiring that a plaintiff must allege its own reliance on challenged statements.  *E.g.*, *Jerome's

Furniture Warehouse v. Ashley Furniture Indus.*, 2021 U.S. Dist. LEXIS 8502, at *15 (S.D. Cal.

Jan. 15, 2021) ("In this case, all of Plaintiff's claims under the FAL and the three prongs of the

UCL are based on fraud.  Therefore, in reliance on the majority of the district courts to consider

this issue, the Court concludes that Plaintiff must allege its actual reliance to support UCL and

FAL claims sounding in fraud."); *Clorox Co.*, 398 F. Supp. 3d at 646 (N.D. Cal. 2019) ("Clorox's

failure to allege its own reliance on the challenged advertisements militates the dismissal of its

unlawful prong claim, but its unfair prong claim is unaffected."); *SPS Techs., LLC v. Briles Aero.,

Inc.*, 2019 U.S. Dist. LEXIS 219610, at *20 (C.D. Cal. Oct. 30, 2019) ("[T]he Court agrees with

the minority view and determines that a competitor plaintiff may allege false advertising claims

under UCL and FAL without alleging its own reliance."); *Allergan United States v. Imprimis

Pharms., Inc.*, 2017 U.S. Dist. LEXIS 223117, at *38 (C.D. Cal. Nov. 14, 2017) ("A majority of

courts have concluded that competitor plaintiffs must allege their own reliance on the alleged

misrepresentations, while a minority do not read *Kwikset* and Proposition 64 as reaching

competitor claims.") (citations omitted); *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp.

3d 852, 866-67 (N.D. Cal. 2015) ("The Court joins the majority of courts to have addressed this

question and concludes that because Plaintiffs do not plead their own reliance on Uber's allegedly

false advertising, they lack standing to seek relief under the UCL's fraud prong.").  However, the

Court is more persuaded that actual reliance isn't required here.

Courts holding that a plaintiff must allege and prove actual reliance find support for that

rule in *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009) and its progeny *Kwikset Corp. v. Superior

Court*, 51 Cal. 4th 310 (2011).  In both cases the California Supreme Court addressed consumer

United States District Court
Northern District of California

1    class actions and held that the passage of Proposition 64 narrowed the reach of fraud-based claims

2    under the UCL and FAL.  "Proposition 64," the court wrote *Kwikset*, "requires that a plaintiff's

3    economic injury come 'as a result of' the unfair competition or a violation of the false advertising

4    law."  51 Cal. 4th at 326 (quoting Cal. Bus. & Prof. Code §§ 17204, 17535).  The court explained

5    that "[t]he phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a

6    showing of a causal connection or reliance on the alleged misrepresentation."  51 Cal. 4th at 326

7    (citation and internal quotations omitted).  Recognizing that "'reliance is the causal mechanism of

8    fraud,'" the court held that in cases like that one, involving consumer claims based on fraud under

9    the UCL or FAL, a plaintiff "'must demonstrate actual reliance on the allegedly deceptive or

10   misleading statements.'"  *Id.* at 326 (quoting in *In re Tobacco II Cases*, 46 Cal. 4th at 306).  "The

11   causation requirement applies with equal force to consumer cases brought under the 'unlawful'

12   and 'unfair' prongs when the claims are based on misrepresentation."  *Allergan*, 2017 U.S. Dist.

13   LEXIS 223117, at *37 (citing *Kwikset*, 51 Cal. 4th at 326, n. 9).

14          There is good reason, however, for not extending the reasoning in *In re Tobacco II Cases*

15   and *Kwikset* to this case.  For one thing, the California Supreme Court in *In re Tobacco II Cases*

16   "emphasize[d] that our discussion of causation in this case is limited to such cases where, as here,

17   a UCL is based on a fraud theory involving false advertising and misrepresentations to

18   consumers," and the court noted that "[t]here are doubtless many types of unfair business practices

19   in which the concept of reliance, as discussed here, has no application."  46 Cal. 4th at 325, n. 17;

20   *see also Kwikset*, 51 Cal. 4th at 326, n. 9 ("As in *In re Tobacco II Cases*, at page 325, footnote 17,

21   we need express no views concerning the proper construction of the cause requirement in other

22   types of cases.").

23          Second, the court in *Kwikset* reiterated that the language "as a result of," added to sections

24   17204 and 17535 by Proposition 64, "'in its plain and ordinary sense means "caused by" and

25   requires a showing of a causal connection **or** reliance on the alleged misrepresentation.'"  51 Cal.

26   4th at 326 (emphasis added) (quoting *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855 (2011) ("The

27   phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing  of

28   a causal connection or reliance on the alleged misrepresentation."); *see also Medina v. Safe-Guard*

*Products, Internat., Inc.*, 164 Cal.App.4th 105, 115 (2008) ("the 'as a result' language imports a

*reliance or causation* element into" § 17204).  California courts' express recognition that injury

"as a result" of a defendant's conduct can be proved by a causal connection <u>or</u> reliance suggests

strongly that there are situations where the element of causation can be proved without showing

actual reliance, so as long as there's sufficient causation.  *See, e.g.*, *Veera v. Banana Republic,*

*LLC*, 6 Cal. App. 5th 907, 916 (2016) (discussing *Kwikset* and writing, "in order to establish

standing under the UCL and the FAL, a private party must "(1) establish . . . injury in fact, i.e.,

*economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the

unfair business practice or false advertising that is the gravamen of the claim.") (quoting *Kwikset*,

51 Cal. 4th at 322).  In the case of a consumer defrauded by a defendant's misrepresentations,

reliance is the necessary "casual mechanism of fraud."  *Kwikset*, 51 Cal. 4th at 326.  But if every

plaintiff in every situation had to prove reliance, "it would be hard to imagine when a competitor

would be able to assert a false advertising claim," *SPS Techs*, 2019 U.S. Dist. LEXIS 219610, at

*22, and the California Supreme Court has made clear that the purpose of the false advertising

laws "is to protect both consumers *and competitors* by promoting fair competition in commercial

markets for goods and services," *Kwikset*, 51 Cal. 4th at 320 (emphasis added); *see also Allergan*,

2017 U.S. Dist. LEXIS 223117, at *38 ("It is hard to imagine a scenario, though, in which a

competitor plaintiff would rely on a competitor defendant's misleading advertisements and suffer

injury.").

The Central District in *Allergan* offered some additional compelling reasoning for not

extending *Kwikset* to all cases.  Proposition 64, the court noted, "was passed in order to 'to prevent

abusive UCL actions by attorneys whose clients had not been "injured in fact" or used the

defendant's product or service, and "to ensure that only the California Attorney General and local

public officials are authorized to file and prosecute actions on behalf of the general public."'"

2017 U.S. Dist. LEXIS 223117, at *39 (quoting *Buckland v. Threshold Enterprises, Ltd.*, 155 Cal.

App. 4th 798, 812-13 (2007) (quoting Prop. 64, § 1, subds. (b), (e), (f))).  The *Allergan* court

reasoned that, "[u]nlike competitor plaintiffs prior to the passage of Proposition 64, competitor

plaintiffs [] do suffer an 'injury in fact . . . as a result' of [a] competitor defendant's actions—loss

United States District Court
Northern District of California

1    of market share and sales due to the defendant's misleading advertising diverting customers."

2    2017 WL 10526121, at *39.  Therefore, Proposition 64's purpose of preventing actions by

3    plaintiffs who have not suffered an actual injury is not served well by extending *Kwikset* to all

4    cases, *id.*, and a rule requiring all plaintiffs to prove actual reliance would in fact defeat the UCL

5    and FAL's purpose of protecting consumers and competitors alike.

6          The *Allergan* court also reasoned that applying *Kwikset*'s reliance requirement to

7    competitor claims makes little sense because false advertising claims between competitors are

8    fundamentally different from false advertising claims brought by consumers.  Even though the

9    predicate unlawful act for both consumer and competitor false advertising claims "is based on

10   misrepresentation, competitor plaintiffs are not concerned with the deceptive activity simply

11   because it's deceptive."  *Id.* at *40.  Instead, they are concerned with the loss of sales and market

12   share "*as a result* of the deceptive activity."  *Id.*  Thus, the *Allegan* court concluded that imposing

13   a direct reliance requirement on competitor claims would impose a "superficial hurdle" on

14   competitor plaintiffs and determined that *Kwikset* did not appear to go so far.  *Id.* at * 41; *see also*

15   *SPS Techs.*, 2019 U.S. Dist. LEXIS 219610, at *21-22 (adopting *Allergan*'s reasoning in full).

16         Based on these reasons, the Court agrees with the minority view.  A non-consumer

17   plaintiff can allege false advertising claims under the UCL and FAL without alleging its own

18   reliance, as long as the plaintiff has alleged a sufficient causal connection.  In this case, Lona's has

19   alleged an economic injury caused by DoorDash's allegedly misleading or false advertising.  That

20   is sufficient for standing under the UCL and FAL.

21         **2.    DoorDash's Remaining Argument as to the FAL Claim**

22         The Court turns now to DoorDash's remaining argument as to the FAL claim.  As an

23   additional ground for dismissing this claim, DoorDash returns to its arguments that Lona's failed

24   to plead DoorDash's alleged false statements with particularity as required by Rule 9(b).  But

25   DoorDash doesn't add anything here to its argument in relation to the Lanham Act claim.  *See*

26   MTD at 24-25.  Lona's allegations of fraud are "specific enough to give [DoorDash] notice of the

27   particular misconduct . . . so that [it] can defend against the charge and not just deny that [it has]

28   done anything wrong."  *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 781 (N.D. Cal. 2017)

United States District Court
Northern District of California

(internal citation omitted).  DoorDash also returns to its argument that the alleged statements were not made as part of advertising.  Here too, DoorDash adds nothing new.  MTD at 25 ("[F]or the same reasons as outlined in connection with [the] Lanham Act claim, this Court should dismiss the FAL claim because Plaintiff has not alleged that DoorDash's alleged challenged statements were in 'publicly disseminated advertising.'").  And for the same reasons outlined above, its argument fails.  DoorDash then returns to its argument that Lona's has failed to allege that it actually relied on DoorDash's purported statements.  MTD at 26.  The Court needn't address that point again either.  And lastly, DoorDash returns to its argument that Lona's has not pled injury.  MTD at 26-27.  Mixed into that argument, yet again, is DoorDash's reliance argument, and beyond that DoorDash adds nothing that it hasn't previously argued.

Lona's has plausibly alleged an FAL claim.

### 3.    DoorDash's Remaining Argument as to the UCL Claim

DoorDash argues that Lona's' UCL claim must be dismissed because Plaintiff has not adequately pled that DoorDash's conduct was "unlawful," "unfair," or "fraudulent" as required by Cal. Bus. & Prof. Code § 17200.  More precisely, it argues that "[b]ecause [Lona's] cannot plausibly plead that DoorDash has violated another statute, its UCL claim based on 'unlawful' action by DoorDash must fail"; that because Lona's "has not pointed to any facts supporting a claim that DoorDash's conduct was 'unfair,' a UCL claim based on that prong must also fail"; and that Lona's' "failure to plead any fraudulent conduct by DoorDash with the specificity required by Rule 9(b) dictates that a claim based on 'fraudulent' behavior must fail."  MTD at 29.  Each of these arguments fails.

"The UCL 'borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.'"  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (quoting *Cel-Tech Commc'ns, Inc. v. LA. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)).  As DoorDash puts it, Lona's "pleads a claim under the UCL if it can point to the violation of another statute by DoorDash."  MTD at 29.  Lona's has adequately pled a claim under the Lanham Act and the FAL, and thus the bottom drops out of this argument.

Turning to the "unfair" prong of the UCL, it "prohibits a business practice that 'violates

1   established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes

2   injury to consumers which outweighs its benefits.'"  *AlterG, Inc. v. Boost Treadmills LLC*, 388 F.

3   Supp. 3d 1133, 1155 (N.D. Cal. 2019) (quoting *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th

4   1457, 1473 (2006)).  "The 'unfair' prong of the UCL 'prohibit[s] not only advertising which is

5   false, but also advertising which[,] although is true, is either actually misleading or which has a

6   capacity, likelihood or tendency to deceive or confuse the public.'"  *Clorox Co.*, 398 F. Supp. 3d

7   at 646 (quoting *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1173 (2018)).  Lona's has alleged

8   that here.

9       And finally, turning to the "fraudulent" prong, DoorDash again returns to its argument that

10  Lona's has not pled fraud with enough particularity to satisfy Rule 9(b).  That argument has no

11  merit.  Lona's has pled a viable UCL claim.

12  **C.    Lona's Right to Injunctive Relief**

13      DoorDash closes out by arguing that the Court should dismiss Lona's' claims for

14  injunctive relief for lack of standing.  Again here, Again, DoorDash seeks dismissal on a basis that

15  is rebutted by the plain allegations of the Complaint.

16      "[W]here a plaintiff seeks declaratory and injunctive relief, as in this case, [it] must

17  demonstrate that [it] is 'realistically threatened by a repetition of the violation.'"  *Deitz v. Comcast

18  Corp.*, 2006 WL 3782902, at *3 (N.D. Cal. Dec. 21, 2006) (quoting *Gest v. Bradbury*, 443 F.3d

19  1177, 1181 (9th Cir.2006)).  DoorDash asserts that "nowhere does the Amended Complaint allege

20  that the purported statements made by DoorDash remain on DoorDash's website or app."  MTD at

21  31.  This too is incorrect.  While Lona's does allege past conduct that appears to have been

22  remedied (listing Lona's as closed when in fact it was open), it also alleges that the problem of

23  DoorDash's app showing it out of range persisted through at least November 11, 2020, FAC ¶¶

24  27-34, over a month after Lona's commenced this action and a day after Lona's moved to dismiss

25  the original complaint—presumably an amount of time in which DoorDash *could have* quickly

26  addressed the problem.  DoorDash asserts that this allegation is false and that it is only contained

27  in Lona's' Opposition, Reply at 12, but the allegation is plainly in the Amended Complaint and—

28  as DoorDash is plainly aware, *see* MTD at 11, n. 1 (laying out standard on a motion to dismiss)—

United States District Court
Northern District of California

25

on a motion to dismiss the court accepts factual allegations in the complaint as true.  Accepting as true Lona's' allegation that it remained on DoorDash's app for more than a month after this action was commenced and DoorDash made an appearance, this is not, as DoorDash argues, a case where the defendant's purported reform was "irrefutably demonstrated [] and comprehensive."  *Buckeye Tree Lodge v. Expedia, Inc.*, 2019 WL 1170489, at *2 (N.D. Cal. Mar. 13, 2019).  The fact that Lona's had to wait over a month for DoorDash to remove the content adds plausibility to Lona's' allegation that "there is nothing to prevent [DoorDash] from reinstating such misrepresentations as to Plaintiff or any member of the putative class."  FAC ¶ 36.

Lona's has sufficiently alleged standing for injunctive relief.

## V.   CONCLUSION

For the reasons stated above, the Court **DENIES** DoorDash's Motion to Dismiss.

DoorDash shall file its answer to Lona's' Amended Complaint within 14 days of this Order (not including the holiday).  The Court will conduct a telephonic Case Management Conference on February 18, 2021 at 10:00 a.m.  This conference shall be attended by lead trial counsel.  By February 11, 2021, the parties shall file a Joint Case Management Statement containing the information in the Standing Order for All Judges in the Northern District of California, available at: http://cand.uscourts.gov/tshorders.  The Joint Case Management Statement form may be obtained at: http://cand.uscourts.gov/civilforms.  If the statement is e-filed, no chambers copy is required.

**IT IS SO ORDERED.**

Dated: January 18, 2021

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California

26